JUSTUS HEARD *v.* WILLIAM A. DANIEL et ux.

Where H. the guardian of B., made three settlements with the probate court, touching the ward's estate, which were made without notice to the ward:—
*Held,* that these settlements are *primâ facie* correct, but the ward may impeach them.

The duties of a guardian should be performed solely with reference to the ward's interest; but if a guardian, in the management of his ward's property, looks to his own private gain, he should be held to a strict accountability, according to the most rigid rules of law.

IN error from the probate court of Amite county; Hon. John Walker, probate judge of Amite county.

This was a proceeding filed in the probate court of Amite county, by William A. Daniel and Caroline his wife, against Justus Heard, who was the guardian of said Caroline, to procure, among other things, a final settlement of Heard's guardian account.   The whole matter of the guardian's account was referred to a commissioner, to ascertain the amount due the ward, and state an account, and make a report of it to the court. The account finally allowed and approved by the court, showed a balance due the ward of $3,457.96, which Heard was decreed by the court to pay.   The matter was then referred to Webb, the commissioner, who made two reports, to both of which many exceptions were taken on both sides.   Exceptions being filed to the first report, it was sent back to the commissioner to readjust his account with instructions to receive exceptions in

behalf of Daniel and wife, to the annual settlements made by Heard in the probate court, and consider them.

The first report of the commissioner shows, that he did allow Daniel and wife to surcharge and falsify the account, the annual settlements of Heard, and that he did disallow and reject many items which had been allowed him (Heard) by the probate court. So that, in taking the second account, the commissioner was merely instructed by the court, to do that which he claimed a right to do, and had done, in stating his first account.

The record shows, that all the estate of the ward which came to the guardian's hands consisted of slaves. And that any moneyed balance that might be found due the ward, would arise from the hire of these slaves.

It appears from the commissioner's first report, that Daniel and wife insisted before him that Heard had not charged himself with the fair annual hire of the ward's slaves, *in his annual* accounts, settled in court, and that he, the commissioner, having decided that these annual accounts were only *primâ facie* evidence for Heard, and might be shown to be erroneous. They, Daniel and wife, claimed the right to show that the hire as reported by Heard, was too low, and that in truth he was chargeable with $10,000 for such hire.

The commissioner then states, " whereupon it was agreed by the parties, that the value of the hire of said slaves for the years 1838–1847, (which included the whole time they were in Heard's possession,) should be submitted to the award of Hamilton McNight, C. C. Cage, and R. R. Webb." (The defendant still retaining his objection to commissioner going behind said annual accounts.) The award of said arbitrators is filed with the report.

*H. F. Simrall* for appellant.

No counsel for appellees.

Mr. Justice FISHER delivered the opinion of the court.

This was a proceeding by the ward against the guardian, in

the probate court of Amite county, to compel the latter to make a final settlement of his guardian's account, and to deliver over the estate to the ward.

It appears that the guardian made three settlements with the court touching his management of the ward's estate. These settlements appear, by the admission of the guardian in the record, to have been made without notice to the ward; and the question therefore arises, whether they shall, upon the final settlement, be treated as final and conclusive as to the matters embraced therein, as insisted by the guardian in the court below, or whether they shall be considered as affording any evidence in favor of the guardian, without additional proof of their correctness, as insisted by the counsel for the ward. We are clearly of opinion that both positions are wrong, and that the rule as recognized by the court, in treating the settlements as *primâ facie* correct, and permitting the ward to impeach them, is the true rule on the subject.

This brings us to the consideration of the main point in controversy, to wit, the first account and accompanying report of the commissioner appointed to take and state the guardian's final account. The first and most important point in controversy, was to ascertain what amount of hire the guardian should be charged for the ward's slaves, during the time they had been in his possession, from the beginning of the year 1838, to the close of the year 1847. It distinctly appears by the commissioner's report, that the parties themselves referred this part of the difficulty to arbitration. The arbitrators made their award, and neither party appears to have objected to it, either before the commissioner or before the court. The commissioner appears to have made the award the basis of the account, at least so far as the charges made against the guardian were concerned. No exception was ever taken or sustained to this part of the account, and hence it was final between the parties.

The complainants interposed but two exceptions, and they were, first, that the commissioner had failed to charge the guardian interest on the sums of money in his hands, and, secondly, that the guardian's annual settlements had been received and treated by the commissioner in taking the account as "*primâ*

*facie* correct." Here it distinctly appears that the only objection urged against the account, so far as it ought to have contained charges against the guardian, was the failure to charge him interest. This was equivalent to saying that the account was correct in all other respects as to the debits against the guardian.

The second exception neither admitted nor denied the correctness of the credits. The ward insisted that the annual settlements were not evidence for this purpose for the guardian, and that he should again reëstablish them before the commissioner. It embraced, first, a question of law, whether the settlements were or were not evidence, without other proof, sufficient to entitle the guardian to the credits therein allowed him by the court. This point we have already decided.

The court overruled both exceptions taken by the complainants. This, as we have seen, was virtually approving of the correctness of the account so far as it contained charges against the guardian. The court, however, referred the account back to the commissioner for the purpose of permitting the complainants to contest the annual settlements. The only matter put in issue by this last reference, was the credits which the guardian claimed. Every thing else had been settled by the arbitrators, and by the acquiescence of the parties in the award.

The question then arises, whether these annual settlements, so far as the credits allowed the guardian are concerned, have been successfully impeached. On this subject it is only necessary to remark, that we have no sufficient showing before us, to authorize us in holding that the account of the commissioner is not correct, except as to the item of $1,000 allowed the guardian for medical services.

This charge appears to have been settled by the arbitrators, who found by their award the net balance of hire for the slaves after allowing the guardian for taxes, clothing, and medical bills. These several matters were settled before the account was recommitted to the commissioner.

As the case appears before us, we are of opinion, that the guardian ought to be charged with the sum of $6,817, the amount ascertained by the award of the arbitrators, and not objected to by the parties in the court below.

As to the credits which ought to be allowed the guardian, it is impossible for us to say, whether the account of the commissioner on this subject is or is not correct.    We see no foundation for the item of $1,000 allowed the guardian for medical services, as this matter appears to have been settled by the arbitrators.

The rules which regulate the conduct of guardians are few and simple.    The office is one of trust and confidence, the duties of which are to be performed solely with an eye to the advancement of the ward's interest.    A guardian having thus performed his trust, ought to be liberally compensated.    If, however, it shall appear that he has abused the confidence reposed in him by the law, and has looked to his own private gain, instead of to the true interest of his ward, he is entitled to no special favor, and ought to be held to a strict showing according to the most rigid rules of law.

We leave it to the court below, to make the application of the rule to this case.

Decree reversed, and cause remanded.