ISAAC R. WADE v. L. O. BRIDEWELL, Judge, &c.

GUARDIAN'S WARD: POWER OF GUARDIAN TO DEFEND SUIT AGAINST WARD.—Previous to the Act of 1846, Hutch. Dig. p. 682, § 12, a general guardian was not a proper person, as such, to represent his ward in any suit or judicial proceeding against the ward, either in the Probate or other court: notice of such suit was not required to be served on him, but on the ward; he was, therefore, incompetent to appear in the Probate Court and waive notice to his ward of a final settlement of an estate in which the ward was interested; and a decree allowing such settlement on such notice is void.

ERROR to the Circuit Court of Claiborne county.    Hon. Hiram Cassidy, judge.

W. S. Wilson and J. B. Coleman, for plaintiff in error,
As to the power of guardian to act for ward, cited Bingham on

Infancy, 152–156; *Goleman* v. *Turner*, 14 S. & M. 118; *Weed* v. *Ellis*, 3 Caines' Cases, 253; *Keith* v. *Jolly*, 4 Cushm. 132; *Gamage* v. *Noble*, 2 Ib. 150; *Cocke* v. *Rucks*, 34 Miss. 107.

*H. T. Ellett*, for defendant in error.

HANDY, J., delivered the opinion of the court.

This was an action against the plaintiff in error as surety on the bond of one Harris, as administrator of one Bruce, to recover a sum of money due the relators of the defendant in error, under a decree of the Probate Court made against the administrator.

The case, as shown by the record, is, in substance, that in January, 1839, Harris, the administrator, presented his final account to the Probate Court; and that Uriah Bruce, the regular guardian of the children of the decedent, the present relators, appeared in court and waived publication on the account and admitted its correctness; and thereupon the account, showing a balance of $835 42, was allowed, and that balance was on the same day paid to the guardian. In the year 1853, a petition was filed by the relators in the Probate Court, alleging that this settlement was void, because no notice thereof was given to them, nor publication made, nor notices put up according to law; and that Harris appeared and answered the petition, and afterwards that said settlement was set aside, and by order of the court a new account was taken; in which, after crediting the administrator with the sum of $835 42 paid under the previous account, he was found due, and decreed to pay, to the distributees the further sum of $1941 27; and for this sum this action was brought, and judgment rendered.

It is insisted, in behalf of the plaintiff in error, that this latter decree is void, because the account and decree thereupon in the year 1839 were final and conclusive of the rights of the distributees; and after the lapse of the term at which it was made, that the Probate Court had no further jurisdiction of the matter. On the contrary, it is insisted, by the defendant in error, that that decree was void, because the Probate Court had not jurisdiction of the persons of the distributees in the manner required by law, so as to conclude their rights by its decree. And the question upon which the case turns is, whether it is competent for the general

guardian of minor distributees to come into court and waive process against his wards, and subject their rights to the jurisdiction of the court, without the steps pointed out by the statute to make them parties, being taken.

Under our law, as it stood prior to the Statute of 1846, a general guardian was not a proper person, as such, to represent his ward in a suit or judicial proceeding against the ward. And whenever any step was to be taken either in the Court of Probates or of Chancery, affecting the rights of the ward, it was necessary that the minor should have notice in the mode prescribed by the statute, in order to subject his rights to the jurisdiction; and that a guardian *ad litem* should be appointed to defend for him. *Stanton* v. *Pollard*, 24 Miss. 154; *McAllister* v. *Moye*, 30 Ib. 258. The giving of the notice is held to be necessary to give jurisdiction of the person in the proceeding; and as the general guardian was not the proper representative of his ward in such a proceeding, it appears to be clear that he was incompetent to waive the notice, and thereby bind his ward. To such a proceeding, he must be regarded as a stranger, whose acts cannot operate to the prejudice of the rights of the ward.

It is true he was competent to execute acquittances for debts due the ward, and for the distributive share of the estate after it was legally ascertained and adjudged. But this power is very different from that which subjects the ward to a judicial proceeding, and submits him to the jurisdiction of a court; which depends upon the provisions of the statutes upon the subject in part, and in part upon the established rules of judicial procedure in such cases. And according to those rules, the general guardian was neither competent to receive notice for his ward; nor, if he could have legally done so, could he have been permitted to appear and put in an answer, as general guardian for his ward, and which could operate to his prejudice.

It is said that no useful purpose could be served by notice to an infant of tender years, that would not be better answered by notice to his guardian; and that a defence by the actual guardian is much more effectual than the formal defence of a guardian *ad litem*. But as to the former, the law has required notice, in order to subject the person and rights of the infant to the jurisdiction of the

court; and, as to the latter, one of its most beneficial effects to the infant is, that the guardian *ad litem* can waive nothing to his prejudice, and his rights are therefore left to the protection of the court, to be guarded with vigilance. And this is a protection against malpractice and collusion. The wisdom of the rule is illustrated here by the increased indebtedness of the administrator found in the latter decree over that of the former one.

But it is insisted, that a proceeding in the Probate Court for the final settlement of an administrator's account, cannot be regarded in the light of a suit; and that it is nothing more than could be done by the guardian and the administrator out of court. Whatever may have been the effect of a private settlement made between the parties, it is clear that when the matter is carried on in court, and in the manner required by law, it has the character of a judicial proceeding or suit. The account of the administrator is propounded for allowance by the court; notice is required to be given to the parties interested; and it is concluded by a decree adjudging to the parties what has been found due to them. It has, then, all the requisites of a suit, and has always been so regarded in practice in this State; and its validity and obligatory force upon the parties to it must be determined by the rules which apply to judicial proceedings in that court.

The power of the guardian to subject his ward's rights to the jurisdiction of a court is also claimed upon the same principle by which he has the right to receive his property and to manage it; to bring suits in his name, and to settle matters of dispute involving his rights. As to instituting suits in the ward's name, that is a mere assertion and enforcement of his right, which is far different from subjecting him to a suit and suffering judgment against him. The other acts are necessarily involved in the duty of the guardian to manage the property and protect the interests of his ward. These acts have always been regarded as pertaining to the duty of the guardian; but the subjection of his rights to the jurisdiction of a court in the attitude of a defendant or respondent, has never been sanctioned. And such a rule would give the guardian the dangerous power of suffering judgment in all cases which might be instituted to the prejudice of the ward; a power which the law has wisely denied to the guardian. Whilst, therefore, it is true that

the guardian had power to receive the distributive share after it had been legally adjudged to him by the court, or to protect his rights by bringing suit for his property, yet he had no power to subject him to the jurisdiction of a court, and to a judgment in prejudice of his rights.

We consider the judgment correct, and it is affirmed.