## JOHN CHAFFE & SONS *v.* IDA BENOIT.

1. CONTRACT. *Verbal lease under Code of 1871 by wife to husband. Effect of Code of 1880.*
   A verbal lease of a plantation made about January 1, 1880, by a wife to her husband, "for the crop season of 1880," was not affected by section 1177 of the Code of 1880, which took effect on the 1st of November, 1880, and required that such leases "shall be evidenced by writing."

2. STATUTE OF FRAUDS. *Verbal lease of land. Uncertain period.*
   A verbal lease of land "for the crop season of 1880," which might or might not be for more than twelve months, according to circumstances, was not within the condemnation of the Statute of Frauds, because not in writing; for where such contract may be performed within twelve months, it is lawful, though its actual completion should require a longer time.

3. SAME. *Void contract. Performance thereof. Effect as to third persons.*
   Though a verbal lease of land be originally void, because for a longer period than twelve months, yet, after it has been performed by the parties thereto, it cannot be attacked in a collateral proceeding, by persons not having had any interest in it.

APPEAL from the Circuit Court of Washington County.
Hon. B. F. TRIMBLE, Judge.

On the eighth day of December, 1881, John Chaffe & Sons sued A. W. Benoit and his wife, Ida Benoit, in *assumpsit*, for $2,344.36, which it was alleged that the defendants owed jointly to the plaintiffs.   On the trial Benoit testified that, in the early part of January, 1880, or in the latter part of December, 1879, he leased " for the crop season of 1880 " the plantation known as the " Greenway plantation " from his wife, Ida Benoit, W. W. Blanton and a Mr. Kirke, who owned the same in undivided shares ; but the lease was verbal and never reduced to writing.   He also testified that it " always required until in the spring, March or April, to finish a crop," which, of course had reference to the spring following the growing of the crop, and that he held the plantation under his lease till about the middle of April, 1880. Blanton testified to the same effect as to the lease of the plantation to Benoit ; but as to the length of a " crop season," he said " that it was possible, in a good season, with plenty of labor, to get out a crop by the first of January."   The plaintiffs objected to the above stated testimony, in regard to the lease, on the ground that " it was not in writing, and was for a longer term than one year."   The objection was overruled and the evidence admitted.

On the 26th of January, 1880, Benoit gave John Chaffe & Sons a mortgage on the crops to be grown on the Greenway plantation to secure his two notes, aggregating $2,850 ; which amount was to be advanced by the mortgagees to Benoit, and Blanton and Mrs. Benoit gave a deed of trust on their interests in the Greenway plantation to secure the same notes.   These notes were paid and the mortgage and deed of trust satisfied in December, 1880.   But Benoit continued after that time to draw drafts on John Chaffe & Sons, and to ship cotton to them until the 31st of March, when the account was closed, leaving a balance against Benoit of $2,341.36, the amount here sued for.

Benoit testified that he told Christ. Chaffe, one of the appellants in January, 1880, that he was operating on the

Greenway plantation under a lease ; and that he never had any other conversation with any of appellants on that subject. Christ. Chaffe, on the contrary, testified that it was his understanding that Benoit was attending to the business on the Greenway place for his wife ; and that the advances made after the mortgage and deed of trust were satisfied, were made on the understanding that the business was being conducted on the same basis as before.

The jury rendered a verdict against A. W. Benoit, but found in favor of his wife, Ida Benoit. The plaintiffs below appealed from the judgment in favor of Mrs. Benoit.

*Nugent & McWillie,* for the appellants.

Prior to the Code of 1880 a married woman could make a parol demise of her land for a year to her husband ; but that rule is now changed by said Code, sect. 1177, and the lease must be in writing, and acknowledged and filed for record, to be valid against any third person. Up to the 1st of November, 1880, there can be no doubt that the contract between Mr. and Mrs. Benoit was valid, as a yearly lease. Beyond the first day of November, 1880, the original contract of lease, if available at all, could not continue, except for the purpose of a settlement by Benoit with his factors. They were notified, he said, that he managed the plantation under a lease from his wife for the year 1880, but that notice, if given, did not extend beyond the year 1880, and could not, because it was not in writing ; and the question, in that point of view, would be whether the husband, after the last day of December, 1880, was in fact operating and carrying on business with his wife's means in his own name, or on his own account. That he was doing this after the 1st of November, and even after the first day of January, 1881, is manifest by the proof.

The case, then, stands thus : The lease, in the contemplation of the parties, was to be for more than a year, and was not in writing ; it is, therefore, a void lease, *or no lease at all*, and the husband could not avail of the lease to limit the liability of his wife's estate.

If, however, the lease expired after the lapse of the year, the same result will follow; for he was, after January, 1880, and until April, 1881, acting exactly as he had done during the year 1880. Blanton proves that the cotton could have been gathered prior to January 1, 1881, and there is no proof of an established custom in the county reasonably to be understood as forming part of the lease; and the lease was for the year 1880. It was certain and beyond doubt. We presume there is no certain and uniform custom on the subject; there is no such proof in the record, and none such, we presume, could have been made. If the notice were given as Benoit says, it could not be availed of to protect his wife's estate. The debt sued for all accrued after the first day of January, 1881, and there was no dispute whatever about the account, for which it is sought to make the wife responsible.

*R. B. Campbell*, for the appellee.

The lease does not appear to have been for a longer time than one year; and before a lease not in writing will be void, it must appear, by its terms, to be for a longer term than one year, affirmatively and certainly. If, by its terms, it might expire within a year, it will not be void, because not in writing. The statute requires a lease to be in writing only when it is, beyond doubt, for a longer term than one year. This is the law in reference to "contracts not to be performed within a year from the making thereof." See Smith on Con. 139; 3 Wait's Ac. & Def. 593, and 7 Wait's Ac. & Def. 41. I can see no distinction between the two cases. The term was "for the crop season of 1880." The contract was made early in January, 1880, or late in December, 1879. Mr. Benoit was preparing for the business of a year, to wit, to raise a crop. No time was fixed, except that it was for the "crop season" of that year. The proof was that a crop could be made and gathered within a year, if the season was favorable and labor was plentiful; and because a wet and unfavorable winter delayed the crop of 1880 until the spring of 1881, cannot bring the lease within the Statute of Frauds. The con-

tract, by its terms, does not show that it was for a longer term than a year; it might have been terminated within the year, and this makes it good. Mr. Benoit took possession of the place some time in January, 1880, and occupied it until the crop was completely gathered; and this takes the lease out of the statute, even if it was for a longer term than one year. See *Wilber* v. *Payne*, 1 Handy, 251. Even if the lease was void, because for a longer term than one year, that does not prevent the parties from performing it, if they desire. See 7 Wait's Ac. & Def. 40. And if such a contract is performed, third parties have no cause to complain of its original invalidity. If my views are correct, the court did not err in admitting the evidence about the lease to the jury. Appellants also invoke the Code of 1880, sect. 1177, to show that Mrs. Benoit was liable. The contract for lease was made in January, 1880; the contract for advances from appellants was made afterwards by A. W. Benoit, in the latter part of January, 1880 — both long anterior to the time the Code of 1880 became operative. If the lease was valid, under the law, when made, as I have attempted to show, A. W. Benoit was owner of the place during the crop season of 1880, which, by judicial cognizance, the court knows, lasted for months after the Code of 1880 became operative. If valid, the lease was irrevocable, and the law of 1880 cannot affect it.

CHALMERS, J., delivered the opinion of the court.

The contract of lease between Benoit and his wife, and the contract for advances between Benoit and Chaffe & Sons, were entered into under the Code of 1871, and the rights of the parties are therefore wholly unaffected by the subsequent adoption of the Code of 1880, whereby husbands are forbidden to lease the plantations of their wives. By the Code of 1871 this was admissible; and when such contract was made, the estate of the wife became in no manner liable for the debts of the husband contracted in making crops. *Grubbs* v. *Collins*, 54 Miss. 485.

There is no force in the objection that the lease was for more than a year, and was void because not in writing. It was for the " crop season of 1880," which might or might not be for more than twelve months, according to circumstances. Where the contract may be performed within twelve months, it is lawful, though its actual completion may in fact require a longer period.    Brown on the Stat. Fr., sect. 273 *et seq.*

But even if the lease had originally been void, having now been performed by the parties, third persons having no interest in it cannot be heard to question it in any collateral controversy.

Judgment affirmed.