COLUMBUS INSURANCE AND BANKING COMPANY ET AL. *v.* A. S. HUMPHRIES ET AL.

1. CHANCERY PRACTICE. *Multifariousness. Different equities against different defendants. Section 1886, Code of 1880, construed.*
   Section 1886, Code of 1880, which declares that it shall not be an objection to a bill in chancery that it unites " several distinct and unconnected matters of equity against the same defendants," does not permit the connecting in one bill distinct and unconnected equities against disconnected defendants.

2. SAME. *Multifariousness. Case in judgment.*
   A. and T., legatees in a will, and M., one of the devisees of another legatee, filed a bill in chancery to compel the executor to account; to foreclose a deed of trust given by the executor, on property *now* claimed by various and

sundry persons, to secure what he owed the estate as·executor; to require an accounting of the partnership affairs of the testator and his partners in business before his death, and the management of the same by the executor after his death; to cancel a deed made to the wife of the executor to property alleged to have been purchased with the funds of the estate; to cancel deeds given by the executor to sundry persons who purchased from him, because the executor was acting without the authority of law; to subject to the payment of the legacies certain choses in action held by one E., who had exchanged for them with the executor, who only had authority to sell; and for many other purposes. The executor, the partners of the testator before death, and all who had had transactions with the executor as purchasers of property and in many other ways were made parties defendant. *Held,* that this bill is bad for being multifarious.

3. Executors. *Surrender of trust by one. Power of acting executor over personalty. Case in judgment.*

W. and M. were named as joint executors of the last will and testament of H., and qualified as such. Afterward M. applied for a discharge and surrendered his trust. W. continued to execute the will. *Held,* that when W. became sole acting executor he possessed all the power conferred by the will or the law as to the personal estate of the testator whether M.'s surrender of his trust was effective or not; and this independently of the statute conferring the power of sale of realty in such case.

4. Same. *Holding title to real estate. Transfer thereof, whether valid. Case in judgment.*

In the above case W., the acting executor, foreclosed a deed of trust, held by the testator, on certain land, bought it in, and took the deed in his own name "as executor." He then sold and conveyed this land to one F. for two thousand dollars, and appropriated the money to his own use. *Held,* that the legal title to the land was in W., unaffected by the words "as executor," and his conveyance to F. is valid, in the absence of any showing of collusion on his part with W. as to the appropriation of the purchase-money.

5. Same. *Will. Power of sale. Power of exchange. Pleading and practice.*

A power to sell the assets of the estate, granted to an executor by the will of the testator, does not include the power of exchange. Under such power an exchange to facilitate a conversion of assets into money may be permissible, but a bill which charges an illegal exchange of property by the executor with some third party requires an answer furnishing an explanation and vindication of such transaction.

Appeal from the Chancery Court of Lowndes County.

Hon. F. A. Critz, Chancellor.

A. S. Humphries, Sr., died in 1873, testate, having appointed his son, W. D. Humphries, and Abram Murdock his executors.

W. D. Humphries was also made guardian of the minor children, and W. D. Humphries and H. G. Humphries trustees for the management of the legacies bequeathed to the children. After disposing of his estate and giving large legacies to each of his several children, among whom were Abram S. Humphries and Mrs. Mary E. Tucker, the will provides as follows:

"Item 12. I hereby direct and empower and authorize my executors hereinafter named to wind up and settle my estate, and direct that no hasty settlement shall be made; and to bring about and arrange said settlement my executors are hereby authorized and empowered to sell all or any portion of the same either by private or public sale as they in their judgment shall deem best, and on such terms as they deem best to all concerned, and my said executors are hereby authorized and empowered to execute and deliver deeds and title to any purchaser or purchasers of the same."

"Item 13. I hereby nominate, constitute, and appoint my son, W. D. Humphries, and friend, Abram Murdock, executors of this my last will and testament, with full and complete power to carry out the provisions of the same, and request that they shall not be required to give security as such."

"Item 8. It is my will and desire, and I direct that the special legacies hereinbefore devised shall be paid over to the said legatees in the common currency of the country at the time of payment, and that said legacies shall be paid the said legatees by my said executors out of my estate, as soon as it can be conveniently done without detriment to my estate."

On May 4, 1886, Abram S. Humphries having had his disabilities of minority partially removed, filed this bill in equity. The bill sets out that the will was duly probated, and that W. D. Humphries and Abram Murdock qualified as executors; that in December, 1873, Abram Murdock pretended to resign, but gave no notice of his application for discharge, and was never legally discharged; that W. D. Humphries is now insolvent, has been removed as executor, and his letters cancelled; that the legacy due complainant has never been paid, but that the legacy to Mrs. Mary

E. Tucker has been more than paid by way of advancements; that complainant has just reached the age of nineteen years, and is not familiar with his father's estate and the actions of the executor, and describes a large amount of real and personal property which complainant believes to have belonged to the estate of the testator, A. S. Humphries, deceased; that W. D. Humphries, as executor of this estate, collected ninety-six thousand four hundred and twenty-six dollars; that he foreclosed a deed of trust made by one W. B. Richie to secure a large sum of money due said estate, and, as executor of this estate, he bought certain lands in Lowndes County, Miss., and Pickens County, Ala. (here described), and took the deed in his name as said executor; that one F. T. Weaver claims to be the owner of this real estate, situated in Lowndes County, Miss., and Pickens County, Ala., and holds a deed to the same executed December 12, 1876, by W. D. Humphries, executor of the estate of A. S. Humphries, deceased; that W. D. Humphries had no authority to execute this deed, and that it is a cloud upon the title of the estate of A. S. Humphries, deceased; that W. D. Humphries appropriated the proceeds, upward of two thousand dollars, received for this land, to his own use; that W. D. Humphries owned an undivided one-third interest in a store-house, and that he purchased the other two-thirds interest with the funds of the estate, and took the deed in the name of his wife, Mrs. R. D. Humphries, who had no separate estate or resources; that, as to certain other lands (here described), John F. and R. F. Hudson claim some interest in them, but on a settlement of the partnership business that had previously existed between the Hudsons and the decedent, the Hudsons will be found to be largely indebted to the estate; that as to certain other lands (here described) that W. D. Humphries did make deeds, so-called, to sundry persons, all of whom are not known to complainant, but he is informed that " W. D. Humphries and his wife, Mrs. R. D. Humphries, John Fenton, Jerry Humphries, George Cook, R. E. Moore, C. A. Johnston, the First National Bank of Columbus," etc., etc., etc., claim to have some interest in some parts of such lands; that their claims are without any validity, and the lands belong to the estate of A.

S. Humphries, deceased, and such claims cast a cloud upon the title; that W. D. Humphries without authority exchanged one hundred and thirty shares or certificates of stock in the Columbus Insurance and Banking Company with Mrs. E. G. McCabe for fifteen bonds of the Mobile and Ohio Railroad Company, and that the certificates of bank-stock are still in the hands of Mrs. McCabe; that the estate owned five hundred and twenty-six shares of stock in the Mobile and Ohio Railroad Company, the whereabouts of which complainant is unable to learn without a discovery from W. D. Humphries and the Mobile and Ohio Railroad Company, and that the same is true as to certain stocks in the Columbus Gas Company, and Columbus, Fayette and Decatur Railroad Company; that the business of the firm of Humphries & Hudson, composed of A. S. Humphries, Sr., and J. F. and R. F. Hudson, was, after the death of the first named, carried on by W. D. Humphries and the Hudsons, and at A. S. Humphries' death the firm was indebted in a large sum to him, which complainant is informed and believes was about thirty-three thousand three hundred and sixteen dollars and thirty-five cents; that September 19, 1879, W. D. Humphries, being indebted as executor to the said Humphries' estate in the sum of sixty-eight thousand two hundred and seventy dollars and thirty-three cents, executed a deed of trust on a large quantity of real and personal property (here described) to secure its payment, but that complainant is unable to learn where this property is without a discovery from W. D. Humphries, those interested in it, or the purchasers of it, the names of whom the bill proceeds to enumerate. The bill then states that in order to get this estate together and preserve it against sales and disposals pending this litigation, it is necessary to have injunctions and other remedial writs, and to have a receiver or receivers appointed. The bill prays that W. D. Humphries, F. D. Weaver, Mrs. R. D. Humphries, Mrs. E. G. McCabe, the Mobile and Ohio Railroad Company, the Columbus Insurance and Banking Company, and various and sundry other persons who had dealt with the executor or the trustee in the deed of trust given by the executor, be made parties defendant; that a discovery be required of those of whom it is

alleged to be necessary ; that the titles to all said property, real and personal and choses in action, be quieted and confirmed to said estate, and all clouds, doubts, and suspicions removed ; that the trust-deed above referred to be enforced ; that injunctions and other necessary remedial writs be granted ; that a receiver be appointed, and such other and further relief be granted as may be necessary.

Mrs. Mary E. Tucker answered, denying that she had ever received any part of her legacy, and making her answer a cross-bill against the complainant and defendants in the original bill. This cross-bill embraced substantially the same persons and subjects involved in the original bill.

Miss Fannie A. Tucker filed a petition in which she set out that Mrs. E. T. Humphries was one of the legatees named in the will of A. S. Humphries, deceased ; that Mrs. E. T. Humphries, having died, left by will to petitioner an annuity to be paid out of the legacy due the said Mrs. E. T. Humphries from the estate of A. S. Humphries, deceased ; that the legacy has never been paid to Mrs. E. T. Humphries' representatives, and that petitioner's annuity is due and in arrear. The petition prays that the petitioner be made a party complainant to the original bill. The Chancellor granted the petition.

The defendants demurred to the original bill and cross-bill on the ground of multifariousness, want of equity, and many other special grounds not necessary to mention here. The demurrers were overruled, and the defendants, F. T. Weaver, Mrs. Lucy J. Sparks, Mrs. E. G. McCabe, the Columbus Insurance and Banking Company, the Mobile and Ohio Railroad Company, and the Georgia Pacific Railroad Company, appealed.

*Orr & Sims,* for the appellants, E. G. McCabe, the Columbus Banking and Insurance Co., and the M. & O. R. R. Co.

1. Redfield says that "no proposition in law is better established than that the personal representative may sell any or all the personal estate of the deceased." 3 Redfield on Wills 226.

" An executor may sell choses in action belonging to the estate at a discount without raising any implication of fraud." 3 Redfield 236.

" An executor may mortgage the legal or equitable assets, or *choses in action,* or pledge any part of the assets for the purpose of better enabling him to administer the estate, and it is of great consequence that no rule should be laid down which may impede executors in their administration, or render their disposition of the testator's effects unsafe or uncertain to a purchaser.   His title is complete by sale and delivery ; *what becomes of the price is of no concern to him.    And this applies to mortgages, pledges, and to assignable bonds.*   2 Williams on Ex. 840, 5th ed.

The bill does not intimate that Mrs. McCabe was guilty of covin.   It states the trade.   It shows good faith, and she being a *bona fide* purchaser without notice takes the title free from all infirmities.   1 Benjamin on Sales, § 649 ; 1 Perry on Trust, § 218; 2 Perry on Trust, § 28.

*Bona fide* purchaser from trustee acquires good title.   *Wise* v. *Dandridge,* 6 George 673.

It is a significant and important fact that the trustees (W. D. Humphries being both trustee and executor) were directed to invest in *par stocks,* and the bill does not deny that first mortgage M. & O. bonds were good as legal-tender notes.

2. It has been assumed in this argument that the grant of power in this will was to W. D. Humphries *and Abram Murdock,* and that any power exercised by *one* without the concurrence of the other is defective.   At the time of the sale of the bank stock there was but *one* executor.   The bill shows that Mr. Murdock had resigned, and whether or not his resignation was lawfully accepted, the fact was he ceased to have any connection with the estate after September, 1873.   But it is asserted that the resignation was a nullity, and therefore he (Murdock) was one of the lawful executors whose concurrence in the sale of the bank stock was necessary. Very well, for the present concede the resignation was a nullity— that he was still executor in the performance of his executoral functions.

" One executor may act in disposition of personal estate without the other." 1 Comyn 467.

" If one gives a bond for his own debt—no detinue for the other administrator."   1 Comyn 468.

" When there are two or more executors all are regarded as one, and the acts of any one good." 3 Waite's A. & D. 258 ; 28 Ga. 568 ; 6 Pa. St. 270.

" Extent of co-executors' powers, as to personalty, regarded as one person." 9 S. & M. 290 ; *Bodly* v. *McKinney,* 9 S. & M. 339.

" Co or joint executors in dealing with personal assets are regarded as one, and the acts of one binding on estate and on all executors. *Bodly* v. *McKinney,* 9 S. & M. 339.

" One or two executors may sell parts of the estate." 3 Redfield 222, 223 ; 4 Bacon's Ab., Title Ex. & Admr. D. 37 ; 1 Will. on Ex. 818.

The doctrine that the act of one executor binds all, and that each has the right independent of the other to represent the testator, and that they are one, and may pay debts, sell personalty, and collect, well and clearly stated by 1 Lomax 359.

3. There is an additional fact fixing Wm. D. Humphries' right as one of the executors to dispose of the bank stock as he did. The grant of power in the will to him was a power coupled with an interest. This is the same Wm. D. Humphries who is made one of the executors. He was one of the legatees—ten thousand dollars bequeathed to him, the oldest son of testator.

This court has said in *Bartlett* v. *Sunderland,* 2 Cushman 395, that if there is an interest coupled with the power the right to sell real estate exists with the survivor. This rule—stringent in its character—has nothing to do with the assets, the personal property of the testator. The executor's right over the personal estate rests on a different foundation altogether ; but we have discussed the power of W. D. Humphries over the real estate, and have shown that he clearly had the power to sell even the lands of his testator. That he had that power over *assets* there cannot be a doubt—if the *less* is contained in the *greater.*

4. The statute law of this State does not impair, diminish, or control any of the common-law powers of an executor.

The will is the executor's law. *Clark* v. *Hornthal,* 47 Miss. 434.

Judge Campbell, in *Buckingham* v. *Wesson*, 54 Miss. 533, said, *"Statutory regulations of sales by executors apply only to such as are authorized by courts, and have no reference to powers of sale conferred by wills."*

Perry quotes from Hill on Trustees, star paging 475, in holding that the exchange under a power of sale may be circuitously made, and that the purchaser in good faith is not to be disturbed. And Hill in turn got the principle from 2 Sugden 482.

Hill on Trustees 249, 3 Am. ed., says that the power of an executor is *extremely ample* both at law and equity, and the court would require a very strong case to be established before it would question a disposition of the assets. And Wharton, in his edition of Hill, page 249, cites very many American cases holding that a purchaser in good faith of assets from an executor will be protected in his purchase. An executor is justified in any course which a judicious man would take in his own matters. 3 Waite's A. & D. 243.

The right to deal in the paper of intestate is recognized in *Owen* v. *Moody*, 29 Miss. 82; 2 S. & M. 687; 7 S. & M. 498; 14 S. & M. 84; 4 How. 237; 45 Miss. 79; 26 Miss. 578.

*J. A. Orr,* of counsel for the appellants, argued the case orally.

*J. E. Leigh,* for F. T. Weaver, appellant.

1. The bill is *multifarious.* Section 1886, Code 1880, does not change the common-law rule, except that the § 1886, Code 1880, recites "the uniting in one bill of several distinct and unconnected matters of equity against the same defendants" shall not be a cause of demurrer. The rule is changed in this and no further: that if you have several causes of complaint against the same defendants, you can urge them all in one bill. But this rule has no application to the case at bar. The causes of complaint may be joint or several. But the defendants are several and distinct, claiming distinct and several titles to distinct and several estates, and the statute does not affect the common-law rule. F. T. Weaver has nothing to do with the administration of the estate, the sale of bank stock to Mrs. McCabe, or of stock in the Mobile and Ohio Railroad or of the Georgia Pacific Railroad, or other allegations of the bill. 1

Bartons' Chancery Practice 256; Snavely & Harkroder, 29 Grattan 125; 1 Daniels' Ch. Practice 334–335; Storey's Eq. Pl., § 275–276; *Dancy* v. *Lake,* 46 Miss. 109; 48 Miss. 553; *Roberts* v. *Starke,* 47 Miss. 263; *Jones* v. *Foster,* 50 Miss. 47; *Stewart Heirs* v. *Coulter,* 4 (Va.) 74, 85, 90; *Loring* v. *Henderson,* 29 Grattan 112–126; *Gaines* v. *Chew,* 15 Curtis (2 H.) 236–239.

In *Gaines* v. *Chew,* 15 Curtis 239, the court says: "In general terms a bill is said to be multifarious which seeks to enforce against different individuals demands which are wholly disconnected."

"Nor could the vendor file a bill for specific performance against all the purchasers."

On page 240 the court says: "They have a common source of title but no common interest in their purchasers, * * * and the question arises, is this multifarious?"

"In the rendition of the accounts the other defendants have no interest, and such a matter, therefore, ought not to be connected with the general objects of the bill.

"The bill in these respects may be so amended in the circuit court as to avoid both exceptions."

The Supreme Court of the United States in this case, which the Chancellor of the sixth district said was conclusive of the controversy, say that the amended bill should exclude Weaver and Mrs. McCabe and all others from the controversy who were not interested in the accounts of the executor. What have they to do with his accounts?

The will gives authority to the executors to sell.

"The will is the executors' law." *Clark* v. *Hornthall,* 47 Miss. 454.

Says Judge Campbell, "Statutory regulations of sales by executors apply only to such as are authorized by courts, and have no reference to powers of sale conferred by wills." *Buckingham* v. *Wesson,* 54 Miss. 533.

In this case the title was never in the testator. These Weaver lands were sold under a deed of trust in 1877, three years after the death of Humphries and the resignation of Murdock, and the rule

as to survivorship as to land cannot be invoked.   The title purchased by the executor was the title conveyed, and there was no lien to the devisees.

Did this authority survive to W. D. Humphries after the resignation of his co-executor, Abram Murdock?   It has been shown by the authorities cited that as to *choses in action* there can be no doubt, but this court has held the same to be the rule as to land. *Clark* v. *Hornthall,* 47 Miss. 434.   So says the code, § 1194, Code 1871 ; § 1984, Code 1880, both reciting, " If land be devised to be sold the sale shall be made and the proper conveyance executed by the executor, or *such* of *them* as *shall undertake* the *execution* of the will."   No one but W. D. Humphries was undertaking the execution of the will when this land was sold.

The right survived to the survivor.   No notice was necessary. *Sivley* v. *Summers,* 57 Miss. 712.   " Sale of land by one of two executors is good."   1 Lomax on Executors 363 ;   *Gedsey* v. *Ralter,* 3 Munf. 345 ; *Nelsom* v. *Carrington,* 4 Munf. 332.

*W. P. & J. P. Harris,* for E. G. McCabe, appellant.

Powers of administration of personal estate burdened with debts and pecuniary legacies, whether derived from the law or the will, adhere from necessity to the acting executor, whether there be renunciation or resignation or death of one or more.

But it is contended that neither of these events happened.   Murdock accepted and survives.   He made an ineffectual attempt to resign, but failed to be discharged.

This is not material ; he refused to act, and each executor has the power to collect, convert, and transfer choses in action, stocks, etc., etc.   *Edmunds* v. *Crenshaw,* 14 Pet. 166.   " One may do what all may do."   *Bodley* v. *McKinney,* 9 S. & M. 339 ; *Galtny* v. *Nolan,* 33 Miss. 569 ; Schouler on Exrs., § 400.

The authority to sell the stock, to transfer it, existed.   There is not in the case that absence of power which prevents the passing of the title.   He was authorized to transfer it—to sell it.   Whether it was judicious or advantageous or injurious to the estate are questions which arise between him and the legatees on his account. He was bound to reasonable prudence and fidelity.   He may have,

in fact, committed a breach of trust in connection with the transfer or a *devastavit* more properly.   Where authority to transfer exists, the question as to third parties is, whether they participated by design or knowledge in the *devastavit,* if such it was.

One dealing with an executor proposing to sell or transfer personal property of the estate is not bound to look for anything but his "letters."   What he proposes is consistent with his general powers.   Schouler on Executors, § 359–351.

We assert,- as a legal proposition, that the executor was not bound in the collection of the assets to sell for cash only or to receive cash only.   In taking something other than money on his own judgment he raises, as between him and the distributees or legatees, a question of liability if loss happens; but as to the party thus paying the thing, be it a note on third parties or not, it is simply a question whether the party knew that a *devastavit* was contemplated or was the necessary effect.   Perry on Trusts, § 800, p. 750, and § 810.

The executor having the title with the power of disposition, and the question being not want of power, but the manner of its exercise, or the purpose of it, or its necessary effect, it is a logical necessity that the inquiry as to a third party purchasing or paying is simply whether he participated in any unlawful design *to abuse* power, not whether there was power.   *Bailey* v. *Dilworth,* 10 S. & M. 409, 410 ; *Martin* v. *Tanner,* 43 Miss. 577.

Here, then, we have an act of transfer of one kind of property for another.   No improper motive is imputed, much less knowledge of such motive in the purchaser, or party to whom the transfer is made.   There is no allegation that the transfer was injurious to the estate.   Nothing stated as to the comparative value of the stocks and bonds, and entire ignorance avowed as to uses to which the bonds were intended to be applied.

Years after the transaction, it is found that the executor is legally a defaulter, but this does not relate back and give character to the particular transaction or affect the innocent party dealing with the executor.

*Evans & Baldwin,* for the appellees.

1. It is urged as an objection that the bill is multifarious. As to what constitutes multifariousness no rule can be laid down; each case must be determined by the court in the exercise of its discretion, according to its individual circumstances. There are two parties to be protected, the plaintiff and the defendant, and the court must be equally guardful of both. If a common thread runs throughout the whole transaction, if a connected story can be told of all the transactions sought to be reviewed, if a common centre can be found from which all the rights called in question and challenged radiate, then the bill is not multifarious. *Delafield* v. *Anderson,* 7 S. & M. 630; *Snodgrass* v. *Andrews,* 1 George 472; *Forniquet* v. *Forestall et al.,* 5 George 87; *Butler et al.* v. *Spann et al.,* 5 Cushman; *Roberts et al.* v. *Starke,* 47 Miss. 257; *McGowan et al.* v. *McGowan et al.,* 48 Miss. 553; *Witherspoon et al.* v. *Evans,* 56 Miss. 488; *Gaines* v. *Chew,* 2 Howard (U. S.) 643; Mitford's Equity Pleadings, § 181; Story's Eq. Pl., §§ 284–5, and 6.

What then is the common thread running throughout all the transactions called in question by this bill?

Where is the common centre from which the matters in question all radiate? The answer is an easy one. *It is all property of the estate of A. S. Humphries, upon which* THE TRUSTS ASSERTED BY THE BILL FALL ALIKE. The bill sets up and seeks to enforce these trusts, and all property subject to them falls within their reach and should be subjected alike to that enforcement.

2. If ever there was a will where the testator reposed powers personal to the donees of it, this will is an instance. He appoints "his son, W. D. Humphries," and "his friend, Abram Murdock," executors, and relieves them from bond. Item 13 of the will. He gives not to W. D. Humphries, not to Abram Murdock, but "to my said executors," power and discretion to wind up the estate, does not CONVEY the property *to* them, does not direct a sale of it, but leaves his estate to be settled by them, and if "they" want to sell all or any portion of the same "they" can do so, "either by public or private sale as their judgment shall deem best," "and on such terms as they deem best," and empowers,

not W. D. Humphries, not Abram Murdock, but "my said executors," to execute and deliver deeds, etc.   See Item 12 of will.

Has an executor the common-law power to exchange?  Is it a power he can exercise *virtute officii ?*  We submit that it most certainly is not.   It will be observed that in the determination of this McCabe exchange branch of the case no question of survivorship arises; that question is for the present waived.

The power to exchange is a power that both Abram Murdock and W. D. Humphries together did not possess; had they both as executors of the will of A. S. Humphries made this exchange, it would not have been valid.   The question we are now discussing is the absolute want of power of an executor to make exchanges of estate assets.

And now as to the Weaver branch of the case.   We have been dealing with personalty, now we deal with real estate.   Had W. D. Humphries, executor, power to convey these lands?  There is no doubt but what Abram Murdock and W. D. Humphries *both* could have sold these or any other lands of the estate, but could W. D. Humphries or Abram Murdock, executor, alone do so?  We maintain that they could not.   *Bartlett* v. *Sutherland,* 2 Cushman 395.   There was no conveyance to them; there was no direction to sell, but simply a power to sell, given them in their discretion.

*Sykes & Bristow,* on the same side.

1. The bill is not multifarious—it was not so originally—and certainly the dismissal as to certain of the original parties leaves it now unobjectionable.   The bill is directed solely against the executor and those to whom he has wrongfully alienated property belonging to the estate; and it is well settled that where several subject-matters are introduced into a bill of complaint—if, as to the subject-matters, and the relief sought, all the defendants be connected, though differently, with the entire subject in dispute—the bill is not multifarious.   *McGowan* v. *McGowan,* 48 Miss. 553.

The subject-matter of this suit is the estate of A. S. Humphries, deceased; its object to collect up the assets, and execute the trusts of the will—assets which we charge the executor has squandered, and trusts which we charge he has failed to carry out.

All the present holders of the estate property holding it directly of the executor—we submit the court will not relegate us to several different suits to accomplish our one great object, there being but one question involved in all the cases.

2. That question is as to the power and authority of the executor, W. D. Humphries, separate and apart from his co-executor, Abram Murdock, to sell and convey the lands, and exchange the personal property of the estate.

We take the true rule in such cases to be this : that the intentions of the testator as gathered from the will must govern in this case, as in all others.

If two executors are nominated and unusual or extraordinary powers are conferred upon them, not officially, but *nominations*, in such a way and in such terms as, connected with the context, to indicate that the powers conferred are in the nature of a personal trust, confided to the discretion of both, the power must be exercised jointly, and the exercise of it by one alone will be invalid. *Bank Port Gibson* v. *Baugh,* 9 S. & M. 290 ; *Bartlett* v *Sunderland,* 2 Cushman 395 ; *Clark* v. *Hornthall,* 47 Miss. 473–5 ; *Montgomery* v. *Miliken,* 5 S. & M. 151 ; *Bull* v. *Bull,* 3 Day, Conn. 384.

We do not deny, what is so elaborately argued by counsel, that where there are two executors and property is devised to them to be sold in the usual course of administration, or even in the absence of such direction of sale of personalty, in the usual course of administration a sale by one would be valid and binding.

But we insist when the will confides the matter to two persons specially named as a matter requiring the exercise of a joint judgment and discretion, the power must be exercised by all, and the execution by one would be invalid.

A fair test of this would be the answer to the query whether the power in question would descend to an administrator with the will annexed. *Montgomery* v. *Miliken,* 5 S. & M. 151 ; *Pratt* v. *Stewart,* 49 Conn. 339.

3. But with reference to the insurance and banking company shares, there is no express power given in the will for the *executors* to " exchange " any property.

The *trustees* appointed in the will for the minors might *jointly* invest in good paper or " par stocks," etc., but the executors had no authority to invest in anything.  *They* could only *sell* or *collect*.

*E. H. Bristow,* of counsel for the appellees, argued the case orally.

*Barry & Beckett,* for A. S. Humphries, appellee.

1. The object of the bill is to collect up and gather in and place in the hands of a receiver this large and valuable estate, which has been wasted and scattered.  If the bill is held to be multifarious, it defeats this very object of the bill.

Here is a connected title and interest to each and every part of this estate through the executors.  They are made parties, and are absolutely necessary parties to all and every part of the bill.  The right and title of the estate and power of the executors is involved in every transaction assailed in the bill.  The code has done away with much of the objections for multifariousness, and provides that distinct and independent demands may be united in the same bill against the same person.  Code 1880, § 1886.

Here, then, is the union of many *connected* matters of equity against W. D. Humphries, and the joinder of the other defendants is merely collateral and incidental to the main purpose of the bill.· If these parties cannot be joined it would defeat this most salutary provision of the code.  But, independent of that, they are all properly joined.  *Gaines* v. *Chew,* 2 How. (U. S. Rep.) 602 ; *Mc-Gowan* v. *McGowan,* 48 Miss. 563–566 ; *Roberts* v. *Starke,* 47 Miss. 260–261 ; *Butler* v. *Sparm,* 27 Miss. 237–238 ; *Delafield* v. *Anderson,* 7 S. & M. 630; *Snodgrass* v. *Andrews,* 1 G. 488–489 ; 34 Miss. 87.

2. This brings us to the last and most important question, viz.: the power of the executors in reference to the exchange of one hundred and thirty shares of Columbus Insurance and Banking Company stock for fifteen railroad bonds and the Weaver lands.

The will confers on the executors " the power to sell at public or private sale, and on such terms as *they* may deem best to the interest of all concerned."

The will itself gives the "*said executors* power to sell at public or

private sale as *they* in their judgment shall deem best, and on such terms as they shall deem best to the interest of all concerned."

This power to *sell* does not authorize an *exchange*. Perry on Trusts, § 769; *Cleveland* v. *State Bank*, 16 Ohio St. 236; *Taylor* v. *Galloway*, 1 Ham. (Ohio) 104; *Harper* v. *Archer*, 6 C. (28 Miss.) 231; *Ringgold* v. *Ringgold*, 1 H. & Gill. (Maryland) 13, 14, 15, 19, 20, 26, 68, 69, 78; *King* v. *Whitton*, 15 Wis. 684; *State* v. *Payne*, 58 Miss. 614; Schouler on Exrs. and Admrs., § 347; 48 N. Y. 601 and 606–607; *Buckingham* v. *Walker*, 48 Miss. 633–634. Discretionary powers to two do not survive. *Pratt* v. *Stewart*, 49 Conn. 339; 24 Miss. 401-402; 47 Miss. 472–473; *Melton* v. *Homer*, 5 Metc. (Mass.) 465.

A power coupled with an interest is an interest in the thing itself and a conveyance of the legal title. *Atwater* v. *Perkins*, 51 Conn. 196–200; 39 Am. Dec. 82 and notes.

In regard to the Weaver land, the bill shows that the executor sold this land and converted the price to his own use and misapplied it. This, under well-settled rules, calls for an answer. If Weaver is an innocent purchaser, he must set it up by plea or answer.

In this State, an executor or administrator cannot sell the personal property without an order of court, and at public auction, except in two cases. Code, 1871, §§ 1144, 1147, 1152, 1153, 1154, 1155, 1173, 1175, and 1196.

An administrator or executor cannot sell bank stocks without previous order of court, as they are *personal property*. *French* v. *Currier*, 47 N. H. 96–98; *Weyer* v. *Second National Bank*, 57 Ind. 198–212; *Butler* v. *Butler*, 10 R. I. 501, 502. And if he does, legatee or creditor can follow it into hands of purchaser. *French* v. *Currier*, 47 N. H. 98; *Weyer* v. *Second National Bank*, 57 Ind. 210; Schouler on Executors and Administrators, §§ 352 and 359; Perry on Trusts, § 831; *Parham* v. *Smith*, 56 Miss. 473. Trustee must accept and qualify. Schouler on Executors and Administrators, §§ 472 and 485.

*Fred Beall*, for A. S. Humphries, appellee.

1. The rule seems to have been, in this State, very well established that the common law has been changed by our statute, and

that although the title to the personalty vests in the executor, yet he cannot sell or dispose of it, except as ordered and directed by the will or by the order of the court. *Cable* v. *Martin*, 1 How. 558; *Ware* v. *Houghton*, 41 Miss. 370; *Hill* v. *Clark*, 14 S. & M. 187; *Edmandson* v. *Roberts*, 2 How. 822; *Barnes* v. *McGhee*, 1 S. & M. 208; *Woolen* v. *Howard*, 2 S. & M. 527; *Joslin* v. *Coughlin*, 26 Miss. 134. The case of *Ware* v. *Houghton* was on the Code of 1857, which is substantially as the Code of 1871.

If I am correct in the position that an executor cannot sell the personal property of his testator without an order of court, unless so directed by the will, then all sales of the personalty made by Humphries, as well as any sales of realty, are void, for he had no order to sell any of the property which he did sell.

But be that as it may, I contend that an authority to sell does not give authority to exchange or barter.

Would it be contended that the chancery court could have ordered Humphries to exchange bank stock for railroad stock? *Clarke* v. *Campbell*, 2 Rawle 215; *Walker* v. *Brungood*, 13 S. & M. 723; *Harmon* v. *Spear*, 2 Dall. 211; *Crawford* v. *Beard*, 4 J. J. Marshall 187.

2. Upon the question of multifariousness of the bill I refer the court to *Snodgrass* v. *Andrews*, 1 Gid. 472; *Gaines* v. *Chew*, 2 How. (U. S.) 619; *Butler* v. *Span*, 5 Cush. (Miss.) 234; *Delafield* v. *Andrews*, 7 S. & M. 630.

*T. P. Landrum, Jr.*, and *Harrison & Landrum* filed an elaborate brief in behalf of Fanny A. Tucker, one of the appellees, but as it discusses exclusively questions not passed upon by the court, it is omitted from this report.

CAMPBELL, J., delivered the opinion of the court.

The bill is multifarious. It is too sweeping and blends too many diverse matters to withstand the objection of multifariousness. The account of the executor; the foreclosure of the trust-deed he gave to secure his indebtedness to the estate; the partnership matters of the testator and the executor with the Hudsons; the deed claimed by W. F. Humphries to have been made to him

by A. S. Humphries ; the claim of Mrs. R. D. Humphries, wife of W. F. Humphries, to an undivided two-thirds interest in certain real estate, and uniting purchasers of real and personal estate from the sole acting executor, are improperly blending distinct and unconnected matters.

These are given rather for illustration than enumeration of the unconnected matters of the bill. We know there can hardly be said to be a rule on the subject of multifariousness, but no case maintains this bill in its discursive range over the affairs of the testator and those who dealt with him in his lifetime, and his executor and all who had transactions with him, whether authorized or not. In *Gaines* v. *Chew,* 2 How. (U. S.) 619, the bill was declared to be subject to objection for multifariousness in respect to Mrs. Barnes and husband, and seeking an account of the executors, and the case was so certified to the court below (from which it came by division of opinion) for expurgation in these particulars.

If it had been before the court on demurrer overruled, the decree would have been reversed. The bill was held to be maintainable in its main features because the gravamen of fraud or wrong in the sales complained of was the same, and applied equally to all the defendants. Section 1886, of the code applies to one form of multifariousness, as formerly existing, but in no way affects the question as to disconnected parties or subjects.

The rule on that subject remains, and if ever to be enforced, should be in this case.

The sole acting executor, W. F. Humphries, possessed all the power conferred by the will or the law as to the personal estate of his testator. Dealing with the personal estate belonged to the office. It is not a question of power coupled with an interest and survivorship of such power. The legal title was in the executor, and to be dealt with as the will or the law directs. Our statute, § 1984 of the Code of 1880, taken from former codes, is founded on the well-known distinction between real and personal estate. It provides for the exercise of the power of sale of land directed by the will to be sold by the person charged with the execution of the will. This provision as to land, while there is none as to person-

alty, sprung from necessity. Without it land could not be sold in certain cases by a single executor or an administrator with the will annexed, but as personalty belonged to the executor or administrator with the will annexed, as owner he can sell, if empowered by the will or the law. It is a function of the office, and exercisable by its incumbent. It matters not whether Murdock's surrender of his trust was effective or not. The acting executor was clothed with all the powers of the executorship as to the personal estate of his testator.

According to the bill, Weaver's title to the land he purchased is unassailable. W. F. Humphries, as executor, had the right to foreclose the trust-deed for the debt due his testator, and having purchased the land and had a conveyance to himself, he had the legal title and could and did convey it to Weaver for a consideration paid. There is no collusion charged against Weaver, and the fact that the executor appropriated the money received from Weaver for the land to his own use, after its receipt, in no manner involves the title of Weaver, who had no concern with the proper application of the money. That the land was conveyed to Humphries as executor did not make any difference. The title was in him, and the words " as executor " merely described the character of the person. They indicated that he had the title in trust, but the fact remains that he had the title and could convey it.

While W. F. Humphries as executor had the power to sell the personal estate, as conferred by the will, *prima facie,* he did not possess the power to exchange one sort of property for another. A power to sell does not include the power to exchange. An exchange may be a step, and a proper and judicious one, in effecting a sale. If it appeared that the executor exchanged shares of bank stock, not readily salable, for bonds which were convertible into money, in the due execution of his trust, the fact that an exchange was one step in the process of conversion of assets into money would not cause a condemnation of the transaction by which an allowable result was reached. Since the will does not confer on the executor power to exchange, the transaction he had with Mrs. McCabe requires explanation and vindication, and therefore the

allegations of the bill are sufficient to call for an answer furnishing the required vindication.

*Reversed and remanded, to be proceeded with in the court below in accordance with this opinion.*