WIRTZ *et al.* *v.* GORDON *et al.*

(Division B.   December 5, 1938.)

[184 So. 798.   No. 33433.]

Everett & Everett, of Indianola, **W. W. Venable**, of Clarksdale, and **Chas. H. Watson**, of Chicago, Ill., for appellants.

**Moody & Davis** and **Elbert Johnson**, all of Indianola, for appellees.

**McGehee, J.**, delivered the opinion of the court.

This appeal is from a decree for the partition of 1878 acres of farm land located in Sunflower County and the recovery of the rental value thereof, and involves the question of whether a sale of the land under a deed of trust which was foreclosed in chancery and at which the appellant Arthur M. Wirtz became the purchaser should in effect be declared void and the claim of title asserted by such purchaser under the proceeding be cancelled as a cloud upon the title on the ground that the appellees, Ann F. Gordon and Edmond Gertrude Faison, who were then minors, were not legally served with process in such

foreclosure proceedings. Other questions are presented and will be considered in their proper order.

On July 9, 1921, E. H. Faison, father of the appellees and husband of Mrs. Gertrude H. Faison, executed his last will and testament whereby he devised and bequeathed unto his said wife and two children all of his property, real and personal, subject to certain conditions therein mentioned. Among other provisions contained in the will, his wife was appointed as executrix to serve without bond, and vested with the following powers under clauses "c", "d" and "e" of such instrument:

"c. To sell and convey, by warranty deed or otherwise, any land that she may think necessary to pay off and discharge any indebtedness constituting a lien on all or any part thereof, or any other purpose.

"d. To borrow money for the purpose of discharging any indebtedness, constituting a lien on any of the property herein devised, to operate and cultivate the plantation, or in fact for any purpose she deems advisable, execute note or notes evidencing the amount or amounts thus borrowed, and secure the payment thereof by executing a mortgage, deed of trust or other contracts on all or any part of the property, herein devised, real, personal and mixed.

"e. Any deed, mortgage, deed of trust or other contract, affecting the title to all or any part of the property, herein devised, executed by my said wife, as Executrix, shall be held and deemed as conclusive evidence that this last will and testament vested in her full and complete power to execute the same, and the property affected thereby shall be fully bound to the same extent as if legal title thereto had been vested in her."

On November 24, 1922, the testator and his wife executed a deed of trust on the land here involved, in favor of Charles Forman, who was designated as trustee, and Herman Hachmeister, who was designated as successor trustee, for the benefit of George M. Forman & Company of Chicago, Illinois, to secure the payment of eighty-four

6½% Farm Loan Mortgage Gold Bonds in the principal amount of $84,000, $5,000 of which matured December 15, 1927, the same amount on the 15th day of each and every December thereafter to and including December 15, 1931, the balance, amounting to $59,000, maturing on December 15, 1932, and which deed of trust was duly recorded in said county.

On November 11, 1926, prior to the maturity date of any of the said bonds, the testator E. H. Faison died and left surviving him his wife, the said Mrs. Gertrude H. Faison, and two children, Ann Faison, who afterwards became, by marriage, Ann F. Gordon, and Miss Edmond Gertrude Faison, as his sole heirs.

The last will and testament was duly probated and letters testamentary were granted to the executrix therein named. In due time claims amounting to $10,867 were probated and allowed against the estate, none of which have ever been paid. The executrix, as such, remained in possession of the land from the death of the testator until July 1, 1933, without any payment of either principal or interest having been made on the bonds, and no taxes were paid on the land by her after the year 1929. In the meantime, on April 6, 1931, the entire 1878 acres of land were sold to individuals for the 1930 taxes due and delinquent thereon, and in April 1932 this land was again sold for the 1931 taxes to the State of Mississippi. The period of redemption from the tax sale made on April 6, 1931, for the 1930 taxes, was to expire on April 6, 1933, and the amount required for its redemption amounted to the sum of $3,681.93. The record discloses that prior thereto the executrix had made every effort, acting by herself and through local attorneys, to obtain funds to make this redemption, but was unable to obtain any part thereof; and, failing in such redemption, the title to said land would have matured on April 6, 1933, in the individual tax purchasers, and all title thereto would have been lost both to the holders of the bonds secured by the deed of trust hereinbefore mentioned and to the

devisees of the land under the will. It was also shown that the executrix was without money with which to complete the crop on the land for the then current year. When this situation developed Louis M. Watson of Chicago, Illinois, acting on behalf of a Bondholder's Committee which had been formed and of which he was chairman, was finally able to induce the appellant Arthur M. Writz to agree to advance the necessary funds to redeem the land from both of said tax sales, after having been unable to get the other bondholders to make any part of such advances. The deed of trust provides among other things that: "if the Trustee or the legal holder of said bonds or any of them shall, . . . advance or expend any money to save said premises and property from sale or forfeiture for taxes such bondholder shall have a right to consider his advance as an additional indebtedness secured by said trust deed and be reimbursed from the proceeds of any foreclosure sale." Wirtz was on that date the holder and owner of $3,000 of such bonds.

On the last day allowed for the redemption of the land from the tax sale of April 6, 1931, and after Wirtz had been induced to come to Mississippi and investigate the condition and value of the land in question, an agreement was reached between Louis M. Watson, as chairman and representative of the Bondholder's Committee in control of $69,000 of the bonds secured by the deed of trust, and Wirtz and the executrix, whereby Wirtz was to advance the money to redeem the land from said sale; also from the intervening sale made to the State in 1932 for the 1931 taxes, together with the sum of $1,000 to enable the executrix to complete her crop on the land for the year 1933; and whereupon one of the local attorneys who had theretofore endeavored to assist the executrix in raising funds for such purposes was to be employed by Watson on behalf of the successor trustee Herman Hachmeister and the bondholders to file a bill in the chancery court to foreclose the deed of trust by and with the consent of the executrix, and in which proceeding it was

agreed that she should be appointed guardian ad litem of the two minor devisees under the will and enter their appearance, and with the understanding that in the event Wirtz, who was advancing the funds aforesaid, should become the purchaser at the foreclosure sale, the executrix would pay to him rent on the land for the remainder of the year, beginning on the date of confirmation of sale, and with the right to repurchase to the same on or before January 1, 1934, by fully reimbursing the purchaser, applying the rent as a credit thereon. At the time this agreement was made the executrix was willing, in the exercise of the power conferred by the will, to execute a deed to Wirtz in lieu of such court proceeding, but both she and Wirtz were advised by such local attorney that she had authority under the will to bind the minors in such chancery proceeding, and that in view of the fact that she had executed junior encumbrances against the land, and that the probated claims were unpaid, it would be necessary that the foreclosure proceeding be conducted in order to convey an unencumbered title to the purchaser.

Accordingly, on April 15, 1933, the bill of complaint was filed by Herman Hachmeister, trustee, and appellant Wirtz, as a bondholder who had advanced money to redeem from tax sales as aforesaid, and process was issued for the executrix and her minor children as defendants, as well as for all junior encumbrancers, all of whom entered their appearance, except that the guardian ad litem undertook to waive the service of process and enter the appearance on behalf of the minors. The land was sold and Wirtz became the purchaser at the sale, made by the chancery clerk as commissioner. When the report of the commissioner came on for hearing on July 1, 1933, the sale was confirmed, the decree reciting that the executrix was present as a witness and requested the confirmation. Thereafter, pursuant to her right to reacquire the land on behalf of herself and the minors, the executrix made application to the Federal Land Bank of

New Orleans for a loan for such purpose, but in which effort she was unsuccessful.

Prior to the date of the foreclosure sale Wirtz had acquired twenty-one bonds of the series in addition to the three originally owned, and it was recited by the chancellor in his findings of fact in the present case that the executrix "was to have the remainder of the year 1933 in which to raise money to repurchase the land, the amount being understood to be approximately $40,000.00 covering the bonds held by Wirtz, and which he claimed to own, taxes and amounts paid for the redemption from the tax sales, expenses and purchase price at sale, etc." And the chancellor further found that in the conference relative to the institution of the foreclosure proceeding in chancery. "Mr. Wirtz was advised that under the powers of the will Mrs. Faison had a right to enter appearance and act for the minor heirs." The record discloses that the executrix was present as aforesaid when Wirtz was so advised.

After entering possession of the land Wirtz executed a deed of trust on the same and obtained a loan of $50,000 thereon from the appellant Robert Hanley, and made valuable improvements aggregating the sum of $41,981.31. At the time of the foreclosure sale, there was due and owing on the indebtedness secured by the original deed of trust the sum of approximately $109,-678.42, plus accrued interest at 6½% per annum from December 15, 1932, and the taxes advanced by the appellant Wirtz. In his finding of fact in the present suit the chancellor states that: "neither the complainant in this cause, nor Mrs. Gertrude H. Faison, nor any other person in interest had ever offered to redeem from the mortgage, but to the contrary, on or about January 1, 1934, Gertrude H. Faison, as executrix of said will of E. H. Faison, deceased, delivered possession of all the lands in question in this cause to Arthur M. Writz, as the owner thereof." Sixty-nine of the eighty-four bonds were surrendered and cancelled, including twenty-four

then owned by Wirtz, upon the distribution of the purchase price paid at the foreclosure sale. The deed of trust provided that the trustee may, and upon the request of the holders of the majority of the bonds, shall, foreclose the equity of redemption by judicial proceeding, etc.

Therefore, without regard to what may be the rights of the holders of the other fifteen bonds—if not bound by the suit filed by their trustee as a representative or class suit in which a decree for the entire indebtedness was rendered—it follows that Wirtz became the equitable assignee, at least pro tanto, of the lien and of the indebtedness to the extent of $69,000 of the bonds, plus taxes and interest, when he purchased at the foreclosure sale, even though such sale should be declared void on account of the want of legal process on the minor heirs in the manner required by Section 2982 of the Code of 1930; and that he succeeded to the rights of a mortgagee in possession from the date of the confirmation of the sale, and with the right to have such indebtedness paid or tendered as a condition precedent to the right of the appellees, Ann F. Gordon and Miss Edmond Gertrude Faison, to enter possession of two-thirds of said land under partition. Moreover, by Section 2128 of the Code of 1930 it is provided that: ''Before a sale under a mortgage or deed of trust, the mortgagor or grantor shall be deemed the owner of the legal title of the property conveyed in such mortgage or deed of trust, except as against the mortgagee and his assigns, or the trustee after breach of the condition of such mortgage or deed of trust.'' The existence of the bonded indebtedness and the validity of the deed of trust on the land is not questioned, and after condition broken the heirs of the grantor therein did not have the right of possession as against either the trustee, or the purchaser who has succeeded to the rights of a mortgagee in possession at a void foreclosure sale, until the indebtedness is tendered or paid; and without which right of possession—essential to tenancy in common—a

partition suit is not maintainable. The appellees and appellant Wirtz were not tenants in common of the land, and the same was not subject to partition as prayed for in the bill of complaint filed in this cause by Ann F. Gordon against her sister, Miss Edmond Gertrude Faison, and others, and wherein the decree appealed from was rendered. As against the mortgagors and the devisees under the will of E. H. Faison, deceased, the legal title of the land, together with the right of possession, passed to the trustee by operation of Section 2128 of the Code of 1930 (Section 2438, Hemingway's Code of 1927, Section 2779 of the Code of 1906) at the time of the default long prior to the foreclosure suit of 1933. Buck v. Payne & Raines, 52 Miss. 271, and Elder v. Jones, 106 Miss. 489, 64 So. 212. Neither can the trustee after condition broken be divested of the legal title and right of possession, nor can the mortgagee in possession after a void foreclosure sale, as equitable assignee of the debt secured, be divested of his equity and right of possession until the debt is tendered or paid. Courts of equity will decline to entertain a bill for relief against an invalid foreclosure sale without a tender or offer to pay the mortgage debt; American F. Land & Mortgage Company v. Jefferson, 69 Miss. 770, 12 So. 464, 469, 30 Am. St. Rep. 587; and this requirement to do equity applies to adults and infants alike. Coburn v. Coke, 193 Ala. 364, 368, 69 So. 574; Marx v. Clisby, 130 Ala. 502, 510-512, 30 So. 517; Bunnell v. Bunnell, 111 Ky. 566, 64 S. W. 420, 65 S. W. 607, 23 Ky. Law Rep. 800, 808, 809, 1101; Tindall v. Peterson, 71 Neb. 160, 165, 98 N. W. 688, 99 N. W. 659, 8 Ann. Cas. 721; and In re Porter's Estate, 5 Misc. 274, 25 N. Y. S. 822, 823. As the court stated in the Bunnell v. Bunnell Case, 64 S. W. at page 425, 23 Ky. Law. Rep. pages 800, 809: "However the tender years of this litigant may move the courts to a protecting care of her property rights, they will not be allowed to prevail at the expense of the equities of the other parties; and what would have been required of an adult litigant as his own

act, the court will impose on the infant as a condition of its action in her own behalf. 'They who seek equity must do equity' applies to all litigants alike." Whether the purchaser in possession under a void foreclosure sale be the mortgagee or a third party, the established rule is that the only right or remedy of the mortgagor or those claiming under him is to redeem the land for the mortgage indebtedness. Helm v. Yerger, 61 Miss. 44, 51; Dickerson v. Thomas, 68 Miss. 156, 158, 8 So. 465; Haggart v. Wilczinski, 5 Cir., 143 F. 22, 26; Romig v. Gillett, 187 U. S. 111, 117, 23 S. Ct. 40, 47 L. Ed. 97; Bryan v. Kales, 162 U. S. 411, 415, 16 S. Ct. 802, 40 L. Ed. 1020; Burns v. Hiatt, 149 Cal. 617, 624, 625, 87 P. 196; Raggio v. Palmtag, 155 Cal. 797, 801, 103 P. 312; Harsh, Guardian v. Griffin, 72 Iowa 608, 609, 610, 34 N. W. 441; Stouffer v. Harlan, 68 Kan. 135, 145, 74 P. 610, 64 L. R. A. 320, 323-324, 104 Am. St. Rep. 396; Stull v. Masilonka, 74 Neb. 309, 321, 104 N. W. 188, 108 N. W. 166; Kaylor v. Kelsey, 91 Neb. 404, 406, 136 N. W. 54, 40 L. R. A., (N. S.), 839, 844, 845; Boschker v. Van Beek, 19 N. D. 104, 109, 122 N. W. 338; Sawyer v. Vermont Loan, etc., Co., 41 Wash. 524, 529, 530, 84 P. 8; 2 Wiltsie on Mortgage Foreclosure, (4 Ed.), Sec. 787; 5 R. C. L. 664 and authorities there cited; 19 R. C. L. 330. In the case of Helm v. Yerger, supra, the mortgagor sought to cancel the trustee's sale as against a mortgagee in possession thereunder, and the court said: "Whether the sale was valid or voidable, the complainant was not entitled to possession of the property. If the purchaser acquired title at the sale, he was entitled to hold possession as owner; if he did not, he was still in possession as mortgagee, and entitled so to continue until the mortgage debt should be fully paid." In the case of Haggart v. Wilczinski, supra, 143 F. 22, the complainants sought to foreclose a mortgage de novo which had been declared void in Allen v. Alliance Trust Company, 84 Miss. 319, 36 So. 285. In upholding the right to again foreclose the court said [page 26]: "The sale under the mortgage . . .

having been declared void, it is not denied that the position of the complainants is, in substance, that of mortgagees in possession. . . . It follows, we think, that where a mortgagee obtains possession by suit, or under an irregular, or voidable, or void, foreclosure, after breach of the condition of the mortgage, he has the right to hold possession until his mortgage is paid. The mortgagor cannot deprive him of possession without first paying the debt. Bryan v. Brasius, 162 U. S. 415, 16 S. Ct. 803, 40 L. Ed. 1022; Helm v. Yerger, 61 Miss. 44, 51; Buckley v. Daley, supra [45 Miss. 338, 339]. We have no reason to doubt that this doctrine prevails in Mississippi. . . . This rule, that the mortgagee cannot be deprived of possession by the mortgagor till the debt is paid is applied in cases where the debt secured by the mortgage is barred by the statute of limitations. Bryan v. Brasius, [3 Ariz. 433], 31 P. 519; Id., 162 U. S. 415, 16 S. Ct. 803, 40 L. Ed. 1022." The rule above announced as to the statute of limitations running against the debt in such case was approved by this court in Wall v. Harris, 90 Miss. 671, 44 So. 36, and it was held in Romig v. Gillett, supra, 23 S. Ct. 42, that a purchaser other than the mortgagee at the foreclosure sale, "stands in the shoes of the mortgagee," citing Bryan v. Brasius, 162 U. S. 415, 16 S. Ct. 803, 40 L. Ed. 1022. No further citation of authorities should be necessary in support of this requirement of one seeking relief against the effect of an irregular or void foreclosure proceeding where the indebtedness secured by the mortgage is admittedly a valid lien against the land. Since there must be a tenancy in common to justify a decree of partition of the land involved in any partition suit, and the existence of a tenancy in common is dependent upon possession or the right to the possession of the land, it therefore appears that under the authorities hereinbefore cited the appellees, not having the right of possession, cannot maintain the suit at bar. Price v. Crone, 44 Miss. 571; Spight v. Waldron, 51 Miss. 356; 7 R. C. L. 815; 47 C. J. 354; Laughlin v. O'Reiley, 92

Miss. 121, 45 So. 193; Tresher v. McElroy, 90 Fla. 372, 106 So. 79; Kissel v. Eaton, 64 Ind. 248; Reed v. Reed, 122 Mich. 77, 80 N. W. 996, 80 Am. St. Rep. 541; Harsh, Guardian, v. Griffin, 72 Iowa 608, 34 N. W. 441. In the Iowa case, supra, partition was denied to infant heirs of the mortgagor who had not been made parties to the foreclosure suit, and the court said [page 442] : "Surely, it will not be claimed that a mortgagor, or one standing in his shoes, as an heir, can bring an action against the mortgagee to partition the mortgaged land. His only right is to redeem."

The decree of the special chancellor in the case at bar whereby the land was partited in kind so as to allot to Wirtz the one-third interest of the executrix and a one-third interest each to the appellees, Ann F. Gordon and Miss Edmond Gertrude Faison, seems to have attached no particular importance to the circumstance that the indebtedness of $139,918.42 outstanding under the original deed of trust at the time of the rendition of such decree in 1938, was a valid lien against the land, and that no tender thereof or other offer to do equity had been made in the premises.

It is unnecessary that we pass on the question as to whether the appellees were entitled to credit on the indebtedness for the full amount of rental value on the land since July 1, 1933, as assessed by the chancellor in the sum of $10,786.34 each against the appellant Wirtz, nor that we consider the value of improvements, or state the amount of the indebtedness which they should pay to free the land of the lien of the deed of trust, for the reason that we are of the opinion that the foreclosure proceeding in chancery whereby Wirtz became the purchaser of the land was a method adopted by the executrix for the exercise of the powers conferred upon her by the terms of the will hereinbefore set forth. The record discloses, as found by the chancellor, that in addition to the unpaid indebtedness and taxes secured by the deed of trust which was foreclosed in 1933, there was other in-

debtedness of more than $30,000 with interest thereon for several years against the land, as evidenced by junior trust deeds and notes executed by the executrix under the powers of the will, in addition to the claims probated against the estate and for the payment of which there was no money or personal property belonging to the estate. The effect of such finding of the chancellor is that the equity of redemption in favor of the appellees at the time of the foreclosure sale was of no value whatever, since there is no contention here made that the land was worth at the time of the foreclosure sale, or at this time, a sum in excess of these several indebtednesses, or even in excess of the amount secured by the deed of trust foreclosed. Since the executrix was vested with the power to convey the land by deed or otherwise at a private sale, we see no reason why she could not agree to the entry of what amounted to a consent decree approving a judicial sale made in a foreclose proceeding instituted with her sanction and approval, and the execution of a commissioner's deed to the purchaser in that behalf. Her request as a defendant in such proceeding that the foreclosure sale be confirmed and a commissioner's deed be executed had the same legal efficacy as if she had been a petitioner instead of a defendant, asking for the entry of a decree sanctioning a sale which she was authorized to make under the will. In either case the devisees are not necessary parties in view of the powers granted under the will. In the case of Preston v. Safe Deposit & Trust Company, 116 Md. 211, 81 A. 523, Ann. Cas. 1913C, 975, the trustee under a will, being doubtful of this power to sell land under the terms thereof, filed, a statutory proceeding and obtained a decree therefor. The proceeding was not in compliance with the essential requirements of the statute, but the decree was upheld under the implied powers of the will, the court saying [page 526]: "The fact that the decree appears to have been founded upon the act of 1868, instead of the implied power contained in the will, is immaterial, since the trustee did

in fact possess the power." And in 3 Bogart on Trusts and Trustees, sec. 742, it is said: "If a decree of the court for a sale is void for any reason, but the trustee had an implied power to sell under his trust instrument, the sale will not be subject to attack although made professedly by virtue of the decree." In Reeve v. North Carolina Land & Timber Co., 6 Cir., 141 F. 821, where the will involved gave the executor power to sell and convey any part of the land, the court held that this gave such executor the authority to direct the making of a curative sheriff's deed direct to the complainant company which had acquired the testator's equity title, and said [page 834]: "He had ample power under [the] will to sell and convey [the testator's] estate, real and personal, and we see no reason for doubting the validity of his direction to the sheriff to make deed to the complainant company."

.While no mention was made in the foreclosure proceedings of the exercise of the power conferred by the will the chancellor in the case at bar found as hereinbefore stated that the purchaser was advised in advance that the executrix had the right, under the powers conferred by the will, to enter appearance and act for the minor heirs, and it is clear that she was acting pursuant to such advice throughout the progress of such proceeding.

It was held in the cases of Yates v. Clark, 56 Miss. 212, Baird v. Boucher, 60 Miss. 326, and Hammett v. Markham, 128 Miss. 39, 90 So. 848, that: "The rule is that, where one has both an estate in and a power over property, and does an act which may be referred either to the the execution of the power or the exercise of his rights as owner, it will be presumed that the act is done by reason of his ownership; but if a conveyance is made, which cannot have full effect except by referring it to an execution of the power, though some estate would pass by reason of his ownership, yet because the conveyance can only have full effect by referring it to the power, this will be done." 90 So. 849. To the same effect are

the following cases: Lee v. Simpson, 134 U. S. 572, 10 S. Ct. 631, 33 L. Ed. 1038; Coles v. Kearney, 8 Ohio Dec., Reprint, 733; Lanigan v. Sweany, 53 Ark. 185, 13 S. W. 740; 49 C. J. 1285; Warner v. Connecticut Mut. Life Ins. Co., 109 U. S. 357, 365 et seq., 3 S. Ct. 221, 27 L. Ed. 962; Campbell v. Johnson, 65 Mo. 439, 440; Kirkman v. Wadsworth, 137 N. C. 453, 457, 458, 49 S. E. 962; Young v. Mutual Life Insurance Co., 101 Tenn. 311, 317, 47 S. W. 428; Edens v. Simpson (Tex. Sup.), 17 S. W. 788, 789; Walke v. Moore, 95 Va. 729, 739, 30 S. E. 374; 49 C. J. 1294; and 21 R. C. L. 795-799.

It is urged however that the entire agreement pursuant to which the foreclosure proceedings were conducted in 1933 was oral and unenforceable under the statute of frauds, Code 1930, section 3343. The answer to this contention is: (1) that the statute of frauds is a personal privilege of the contracting parties sought to be charged, and is not available to anyone else in a collateral proceeding, Grisham v. Lutric, 76 Miss. 444, 24 So. 169; Chaffe & Sons v. Benoit, 60 Miss. 34; (2d) that the agreement was fully performed on the part of Wirtz by advancing the tax redemption money and the loan of $1,000 to the executrix, the institution and completion of the foreclosure proceeding as consented to by all of the parties to the agreement, and then on the part of the executrix by the delivery of possession of the land to the purchaser at such sale. Bentley et al. v. Barnes, 162 Ala. 524, 50 So. 361, 362; Rovelsky v. Scheuer, 114 Ala. 419, 422, 21 So. 785; Emond v. Robison, 213 Ala. 150, 104 So. 323, 324; Penney v. Norton, 202 Ala. 690, 81 So. 666, 668; Clark & Lewis, Inc., v. Gardner, 91 Fla. 1059, 109 So. 192, 193; and 13 C. J. 305.

The ultimate facts and the conclusions of law applicable thereto, hereinbefore stated, render it necessary that the decree of the court below, whereby the land in question was partited and recovery of rents thereon was awarded appellees, be reversed and decree rendered here for appellants.

Reversed and decree here for appellants.

On Suggestion of Error.

In Banc. Nov. 13, 1939.  192 So. 29.

**McGehee, J.**, delivered the opinion of the court on Suggestion of Error.

On suggestion of error, the former opinion herein, as rendered by Division B and reported in 184 So. 798, was withdrawn, the judgment therein set aside, and the cause remanded to the docket and argued before Division A. Thereafter the case was considered by the Court in banc, and with the result that the said former opinion and judgment are reinstated and adopted by the Court in banc as the decision and judgment of the Court. Consequently, the decree of the court below is reversed, and decree rendered here for the appellants.

Reversed and decree here for the appellants.

Dissenting Opinion.

**Ethridge, J.**, delivered a dissenting opinion.

I am wholly unable to agree with the opinion in this case; I think the opinion of the majority will create considerable confusion in matters involving estates and mortgages or deeds of trust. The proceedings set up in this case to bar the complainant's right to a partition of the lands cannot, in my judgment, be properly entertained for that purpose. The bill filed by Ann F. Gordon simply sought a partition of lands owned by her father at the time of his death, which were encumbered by a deed of trust executed by her father and mother upon the lands described. Her father had made a will, constituting his wife executor and testamentary guardian of his two minor daughters, one of whom was the complainant, Ann Faison Gordon, who at the time of the said foreclosure proceedings of the deed of trust was a minor, her mother being her guardian and also the executor of the estate of the minor's father; she had qualified as such

executor, and probated claims in excess of the $10,000 probated against the estate of E. H. Faison, deceased.

It will be necesary to set forth the terms of the will, and the allegations of the bill filed by the complainant, Ann F. Gordon (née Faison), and pertinent provisions of the deed of trust, and the nature of the proceedings by which the deed of trust was attempted to be foreclosed in chancery. The will reads as follows:

"I, E. H. Faison, over the age of twenty-one years, of sound and disposing mind and memory but knowing the uncertainty of human life, do hereby make, declare and publish this my last will and testament.

Item One. It is my desire my just debts, including the expenses of my last illness and burial, be paid by my executrix, hereinafter named, without resort to the courts, if possible.

"Item Two. I give, devise and bequeath to my wife, and children, living at my death, share and share alike, all of my property real, personal and mixed, in possession and expectancy and wheresoever situate, subject to the conditions hereinafter mentioned.

"Item Three. I direct that all of the property, herein devised, be held and used by my said wife and children in common, unless or until my said wife shall marry, or one or more of my children shall become of age, or marry, upon the following express terms and conditions, viz.:

"a. Should my wife marry then I direct that the property herein devised, shall be partitioned and the share of my wife and children set aside and allotted to each of them, respectively.

"b. Should any of my children become of age, or marry, then the share of such child in and to the property, herein devised, shall be allotted and set apart to such child, and this process continue until such child shall become of age, or marry. If, however, my wife should marry before the share of each child shall be allotted and set aside, as herein provided, the said prop-

erty shall be partitioned, allotted and set aside to each, as provided in subdivision a, above.

"c. In the event the property, herein devised, shall be allotted and set aside to my children, as herein provided, the property, thus set aside and allotted to each of them, shall be freed from the control of the other devisees herein, as well as the provisions of this last will and testament.

"d. In making the partition and allotment, as herein provided, I prefer that the property set aside and allotted to each child, as such child's respective share of the property, herein devised, be unencumbered real property, if the same can be done without detriment to the interest of all parties concerned.

"Item Four. . I hereby appoint my said wife, Gertrude H. Faison, executrix of this my last will and testament, and expressly provide that she shall not be required to give bond as such, or account to any court whatever for her actions in the premises.

"Item Five. So long as my said wife shall remain unmarried, and not afterwards, I hereby expressly confer on her, as executrix, as to any and all of the property devised, the following powers, as to which she, and she only, is vested with full and complete direction both as to the construction and exercise thereof, to-wit:

"a. To use any and all money, from whatever source derived, for the support and maintenance and education of herself and children.

"b. To rent, operate or cultivate all or any part of the lands herein devised, by such method and manner as she may deem best, and use the proceeds thereof for any purpose she thinks proper, though I trust that she will, at all times keep on hand sufficient money for all emergencies.

"c. To sell and convey, by warranty deed or otherwise, any land that she may think necessary to pay off and discharge any indebtedness constituting a lien on all or any part thereof, or any other purpose.

"d. To borrow money for the purpose of discharging any indebtedness, constituting a lien on any of the property herein devised, to operate and cultivate the plantation, or in fact for any purpose she deems advisable, execute note or notes evidencing the amount or amounts thus borrowed, and secure the payment thereof by executing a mortgage, deed of trust or other contracts on all or any part of the property, herein devised, real, personal and mixed.

"3. Any deed, mortgage, deed of trust or other contract, affecting the title to all or any part of the property, herein devised, executed by my said wife, as executrix, shall be held and deemed as conclusive evidence that this last will and testament vested in her full and complete power to execute the same, and the property affected thereby shall be fully bound to the same extent as if legal title thereto had been vested in her.

"Item Six. In making this last will and testament it is my sole purpose to fully protect, as far as possible, my beloved wife and children, and I fully trust her to carry out my intent, in letter and spirit, as herein expressed.

"In testimony whereof, I hereby make, declare and publish this as my last will and testament in the presence of C. C. Moody and J. L. Williams who, at my request and in my presence, have attested the same as witnesses, hereto, and in whose presence I have also subscribed the same, this the 9th day of July, A. D., 1921."

The bill filed by the complainant, Ann F. Gordon, set up that E. H. Faison executed the above will and testament on the 9th day of July, 1921, and that he died on the 11th day of November, 1926; that the said will was admitted to probate on the 16th day of November, 1926, and was duly recorded in the will book of Sunflower county; that by said will the lands mentioned in the bill were devised to Gertrude H. Faison, wife of E. H. Faison, now his widow, and to the complainant, Ann F. Gordon, and to Edmund Gertrude Faison, his children; that thereby

they were vested with and undivided one-third interest in such lands, as tenants in common; that the complainant was born on the 28th day of September, 1912, and Edmund Gertrude Faison, the defendant, was born on June 26th, 1916; that thereafter, about the 15th day of April, 1933, while the complainant and the defendant, Edmund Gertrude Faison, were still minors, the defendant, Arthur M. Wirtz, together with one, Herman Hachmeister trustee, filed a bill of complainant in the chancery court, giving the style and number of the bill, and a copy thereof, with the proceedings thereunder, as exhibit to the bill herein filed. It was therein averred that although this complainant and the defendant, Edmund Gertrude Faison, were named as parties to the said bill of complaint, yet the complainant states and charges that she and Edmund Gertrude Faison were not made parties defendant to the said bill of complainant by any process emanating from the chancery court; which court acquired no jurisdiction of the complainant herein, or of Edmund Gertrude Faison, her minor sister; and that all of the proceedings in the said suit attempting to foreclose the mortgage, so far as concerns the complainant and the said Edmund Gertrude Faison, are null and void; and that as to them Wirtz did not acquire title to the lands described in the bill, and it is only by virtue of the proceedings in the suit that he has or claims any interest in the land.

It is then alleged that the complainant is not informed as to whether by virtue of the proceedings had in the said suit to foreclose, Arthur M. Wirtz acquired title to the lands described as against the defendant, Gertrude H. Faison, and asks to have this question adjudicated by this Court.

It is alleged, however, that by virtue of the proceedings had in said cause, Wirtz took possession of the lands involved on or about the first day of January, 1934, and since that date has continued in possession thereof, receiving all of the rents, issues and profits arising there-

from; and that by virtue of the said proceedings, and the assertion of title thereunder by Wirtz, a cloud, doubt and suspicion is cast upon the title of complainant to said lands, which she is entitled to have cancelled and annulled by the court.

It was then alleged that Wirtz executed the deed of trust to one Robert Hanley, wherein F. E. Everett was made trustee, which deed of trust was described as to date and record, and it is alleged that the said deed of trust undertook to convey the lands described in the bill, to secure a certain indebtedness mentioned in the said deed of trust; that so far as the complainant is concerned, the said deed of trust is a nullity, and the same is true as to Edmund Gertrude Faison, and did not have the effect of vesting the title to said lands in Everett as trustee, but that their lands remained unaffected by the execution of the said deed of trust; but that its execution had the effect of causing a cloud, doubt or suspicion on the title of complainant and Edmund Gertrude Faison; that the complainant is not informed as to whether the rights of the defendant, Gertrude H. Faison, are affected thereby; and now asks that the questions be adjudicated by this Court.

It is alleged that the complainant and Edmund Gertrude Faison are each entitled to a one-third interest in the said lands, as tenants in common with Arthur M. Wirtz, provided said Wirtz, by virtue of the proceedings above mentioned, to foreclose, acquire title to the interest of said Gertrude H. Faison in and to the land; and if not, then the complainant and Edmund Gertrude Faison are tenants in common with Gertrude H. Faison; and adjudication of the rights as between Arthur M. Wirtz and Gertrude H. Faison as to the lands embraced in the bill is prayed.

The deed of trust was given by Edmund H. Faison and Gertrude H. Faison on the lands in the bill, to secure bonds issued upon the said lands in the sum of $84,000. It was provided in the deed of trust that all of the hold-

ers of the bonds secured by the deed of trust should share equally and have equal rights in the security for the payment of the bonds; and on the face of the bonds themselves it was provided to the same effect, that "the bonds are issued under and equally secured by deed of trust of even date herewith, made by Edmund H. Faison and Gertrude H. Faison, his wife, parties of the first part, to Charles Foreman & Company, of Chicago, Illinois, as trustees."

It provided also, that the grantors in the deed of trust should remain in possession until default was made, and should have the right to prosecute and defend in their own name any suit necessary to enforce their right to possession and enjoyment of the property therein conveyed as against third parties, or for the enforcement of any of their rights and claims in regard thereto.

It is then provided in article 5 of the deed of trust that in case of default in payment when due of interest on any bond secured and outstanding, and such default shall contiue for one month, or in case default shall be made in the payment of the principal of any of the said bonds, as and when they shall become due according to their tenor and effect; or in case of default in the performance of any other covenant or condition thereof continuously for one month, "then the whole of the indebtedness secured hereby, may, at the option of the holders of one-quarter in amount of the bonds outstanding, and without notice to the said parties of the first part be declared due and payable and on written request of such holders of bonds the trustee shall declare the principal of all the outstanding bonds due immediately, together with all the interest accrued thereon;" and the trustee may proceed to enforce the trust deed as thereinafter provided, or at his option institute proceedings for an action at law or in equity for such amounts as may then be unpaid, or may enforce payment thereof by said remedy, if desired. That if any such default as is mentioned in section 1 of the article occurs, the trustee, up-

on request in writing by the legal holder or holders of a majority in amount of the bonds, outstanding and unpaid, if lawful under the statutes of Mississippi, after public notice of time and place by advertisement, etc., may sell the said lands. It is further provided that in either of the defaults mentioned, the trustee, on request in writing of the majority of the holders of the bonds still outstanding and unpaid, may foreclose the equity of redemption of the estate and property conveyed by judicial proceedings, etc.

Default having occurred in payment of taxes, the lands were advertised for taxes; and on April 6, 1931, the entire body of land, embraced in the deed of trust, was sold to individuals for the 1930 taxes; in April, 1932 they were again sold for the 1931 taxes, to the state of Mississippi. The period of redemption from the tax sale of 1930 was to expire on April 6, 1933, and the amount required for redemption from such sale was $3,681.93. The executrix, Mrs. Gertrude H. Faison, tried to raise the money for the redemption of the said lands, but was unable to do so; and the tax titles to the individuals were about to mature on April 6, 1933, in which event the adults would be divested of their right, title and interest in and to the land; but the minors, the complainant and her sister, would have had two years from the date of their respectively reaching the age of 21 years to redeem the same.

In this situation L. M. Watson, of Chicago, representing some of the bondholders, arrived at Indianola on January 29, 1933, to investigate the tax situation. He had a conference with the executrix, Mrs. Gertrude H. Faison, and learned that she had not succeeded in raising the money with which to redeem the lands. Mrs. Faison made other efforts to secure the money, which failed. Louis M. Watson induced Arthur M. Wirtz to go to Indianola to inspect the plantation and determine whether he would supply the necessary funds to prevent ripening of title in the tax purchasers. Watson and

Wirtz went to Indianola about the first of April, 1933, made the investigation of the plantation and situation, and thereafter had a meeting with Gertrude H. Faison. Watson claimed to represent the bondholders, or some of them; and after considerable discussion it was agreed by Gertrude H. Faison and by Wirtz and Watson that she would consent to a foreclosure for the purpose of divesting the interest of her minor daughters in said lands; and upon filing of the foreclosure bill she would enter her appearance individually, and as executrix of the estate of Edmund H. Faison and as guardian ad litem, the appearance of her minor daughters; and that as such executrix she would assist in every way possible in expediting and effecting the foreclosure.

Wirtz agreed to redeem the lands from the 1931 tax sale, and also from the 1932 tax sale for 1931 taxes, and to buy at the foreclosure sale as cheaply as possible; and that if he became the purchaser, to furnish the said executrix with sufficient funds to complete the crop already planted on said lands. He further agreed to sell the said lands to the executrix, provided she could raise the money to pay therefor before the expiration of the year 1933, the amount due Wirtz understood to be approximately $21,000.00, covering the bonds bought by Wirtz, the redemption from the tax sale to be included and rent for the intervening period to be paid by her to Wirtz. She was to go through bankruptcy, to enable her to safely take title. But if Gertrude H. Faison, individually or as executrix, could not raise the money to pay taxes and the $21,000 bonds during the remainder of the year, she was to deliver possession of the said lands to Wirtz. It was agreed to cause foreclosure proceedings to be filed on behalf of the bondholders.

A witness, discussing the agreement then reached, said, among other things. "We discussed the advisability of Mrs. Faison executing a deed as executrix of the estate, and I advised them she couldn't execute a good deed to the property for the reason that the estate was shown

to be in debt, and that the probated claims were a lien on the property, and that these second and third mortgages on the property were there, and these things couldn't be eliminated, if she was giving a deed to it". Mrs. Faison wanted some additional money, that Mr. Wirtz told her he would let her have, if he became the purchaser of the lands—and it was necessary to act as rapidly as possible in order that she might get the funds to complete her crop with. Mrs. Faison was to be appointed guardian ad litem of the children, to enter their appearance for herself individually, and as executrix of the estate, and as guardian ad litem for the children— she to assist in every way possible to expedite the foreclosure. The land to be bid in by Mr. Wirtz, at the least possible bid—Mrs. Faison to take bankruptcy, so as to be able to take title back, if necessary money raised by 1/1/34. If not, then Mr. Wirtz to have property at that time.

The bill was filed in the chancery court, seeking a foreclosure of the deed of trust in that court under judicial proceedings, and Mrs. Gertrude H. Faison waived process for herself, both personally and as executrix; and undertook to waive process on behalf of the minors, both as to herself as guardian, and the minors personally. She was appointed guardian ad litem by the court. When the cause came on for hearing the court entered a decree pro confesso as to all the defendants, including the minors, and directed the land to be sold.

There was, in fact, no process served upon the minors personally, nor upon the guardian; but. as stated, the guardian undertook to waive such process. The court entered a decree, directing the sale, appointing a commissioner to make it—describing the lands to be sold— and directing the commissioner to give notice of the sale, and to report his action to the court for confirmation. In advertising the land for sale, there was omitted from the lands described a portion of the lands embraced in the decree and in the deed of trust. This being discov-

ered after the lands were sold, on application therefor, the court undertook to reform the proceedings without reselling the lands.

At this sale which was made by a commissioner appointed by the court (not by Mrs. Gertrude H. Faison), Arthur M. Wirtz bid for the lands in the sum of $5,000. There being no other bids, the lands were struck off to him, and the chancellor confirmed the sale as stated, without having the minors served with process, as required by statute.

The bill filed by Ann F. Gordon does not undertake to cancel, or affect, the mortgage itself, given by her father and mother to secure the bond issue above described. It merely attacked the foreclosure proceedings, or rather prayed for a cancellation of the foreclosure proceedings, and trustee's deed, as a cloud upon her title, and sought to have the question determined by the court in regard to the ownership of the one-third interest that under the will was devised to Gertrude H. Faison; and to have an accounting by Wirtz for the use and occupancy of the premises by him.

The bill in the original proceeding to foreclose the deed of trust nowhere relied upon the power of sale conferred by the will upon Gertrude H. Faison; the will was only mentioned in that bill for the purpose of showing that Mrs. Gertrude H. Faison had executed other encumbrances upon the property under the will. It was in no sense a sale by Gertrude H. Faison—in fact, she was made a defendant therein, and treated as an adverse party in interest to the bill and to the complainants therein. The sale was not made by Gertrude H. Faison under the decree of court attempting to foreclose the mortgage, but by a commissioner appointed by the court. The right of the complainant, Ann Faison Gordon, to file a bill or petition, accrued when she arrived at the age of twenty-one, or when she married. At the time of the filing of this bill she was twenty-one years of age and married. Her right of possession had not accrued,

so far as the right to separate possession is concerned, when Wirtz went into possession of the land. Consequently she had a right, under Section 2920, Code of 1930 to a partition of the property, and her interest set apart to her, and an accounting for the rents and profits of the place for the period of Wirtz' occupancy. This she had a right to do without a tender of the debt. See Johns v. Smith, 56 Miss. 727, and other cases hereinafter cited.

The existence of the encumbrances on the land did not affect her right to have her land set apart to her, and to an accounting for the profits received by Wirtz during his occupancy; all these rights could be settled in the partition proceedings under section 2923, Code of 1930, which reads as follows: "If the title of the complainants seeking partition of sale of land, for a division shall be controverted, it shall not be necessary for the court to dismiss the bill but the question of title shall be tried and determined in the suit and the court shall have power to determine all questions of title, and to remove all clouds upon the title, if any, of the lands whereof partition is sought and to apportion encumbrances, if partition be made of land encumbered and it be deemed proper to do so; and the court may adjust the equities between and determine all claims of the several co-tenants as well as the equities and claims of encumbrancers."

Encumbrancers on land will not prevent partition. Doran v. Beale, 106 Miss. 305, 63 So. 647. Nor does the fact that the estate is being administered, and that there are probated claims against it, affect the rights of one of the tenants in common. Garrett et al. v. Colvin et al., 77 Miss. 408, 26 So. 963. The complainant, therefore, had a right to file a suit, and have the partition made, so that she could severally occupy a part of the land. It is immaterial that there were liens or probated claims against her interest, and that it might be taken from her by foreclosure. When her right to her property, and the

equity between her and Wirtz had been settled, she had the power (if she could procure it) to use the property in securing money with which to discharge these encumbrances, or to make arrangements with the encumbrancers to extend the time within which that could be done, or to take care of the obligation in any way known to the law.

In what I shall say in this opinion by way of criticism of the transaction at the time of the attempted foreclosure, and agreement in reference thereto, and all the proceedings therein is said because the parties were not on qual terms. Mrs. Faison had but little option except to accept any terms offered her. It is necessary to discuss the matter in order that the rights of the parties may appear, and that my view of the law should be understood. Mrs. Faison and the attorney, and others interested as junior mortgagees, were interested in having property sold for taxes redeemed; and they were in desperate straits in regard to procuring money, since the financial state of the country at that period was at its worst, with many financial institutions closed, and many persons had lost their property.

As stated in the bill filed by the complainant, and as shown by the undisputed proof, including the court records, she was never served with any process to defend that suit in the manner required by law. The manner in which process shall be served on an infant defendant or cross-defendant, is described by section 2982, Code of 1930, which reads as follows: "If the defendant be an unmarried infant, the process shall be served on him personally, and upon his father or mother or guardian, if he have any in this state; but if he be married, process may be served as on an adult. If an unmarried infant be joined as codefendant with his father or mother, or guardian, it shall not be sufficient to summon such infant and his father, or such infant and his mother, or such infant and his guardian, in one process, but one copy of the process shall be served on the infant per-

sonally and a copy served personally on such father or mother or guardian.''

It has been held in a number of cases that the statute must be complied with strictly, or else the court does not have jurisdiction over the defendant. The complainant herein was a minor at the time; and while process was issued by the clerk, it was not served by the sheriff, but, as stated, was delivered to an attorney; and Mrs. Gertrude H. Faison undertook to accept the service and enter appearance for the minors—which she could not do under any circumstances. No jurisdiction can be had of a minor's person or property except by service of process in the statutory manner. Parker v. Smith et al., 150 Miss. 849, 117 So. 249. Under the section of the Code above mentioned it has been held that a decree against an infant is absolutely void unless it is shown affirmatively that process was served upon the mother, father, or guardian, as part of the service on the infant— or that he had none in the State. Gibson v. Currier, 83 Miss. 234, 35 So. 315, 102 Am. St. Rep. 442. This case overrules on this point McIlvoy v. Alsop, 45 Miss. 365. See also, Jones v. Mathews et al. (Miss.), 4 So. 547, not reported in State reports.

If an infant is not legally served with process, as provided by law, appearance by attorney will not bind him. This statute applies in court proceedings where property is involved. See Moore v. Allen, 72 Miss. 273, 16 So. 600. A guardian's appearance is insufficient, unless the minors are made parties and brought into court by citation served upon them. Kennedy v. Gaines, 51 Miss. 625. It has also been held that where a guardian petitions to have lands sold, a guardian ad litem may be appointed by the probate court to represent their interest; and if this is not done the sale will be void. Such guardians ad litem cannot be appointed until process has been served upon them. McAllister v. Moye, 30 Miss. 258; Wade v. Bridewell, 38 Miss. 420; Kennedy v. Gaines, 51 Miss. 625; Burrus v. Burrus, 56 Miss. 92;

Johnson v. Cooper, 56 Miss. 608. A decree of the probate court for the sale of land of a decedent, rendered upon petition of a guardian, without his ward's having been cited, or a guardian ad litem having been appointed, is void. Rule v. Broach, 58 Miss. 552.

A chancellor cannot appoint a guardian ad litem for a minor, to conduct a litigation, until the minor has been brought into court. The court acquires no jurisdiction of minors, to do anything in their behalf, until it has jurisdiction in the way provided by the statute.

The bill having been filed against Mrs. Gertrude H. Faison, the minor defendants, and others, by Wirtz and Hachmeister, the proceeding cannot be held to be the act of Mrs. Faison. Consequently the cases of Preston v. Safe Deposit & Trust Co., 116 Md. 211, 81 A. 523, Ann. Cas. 1913C, 975; Yates v. Clark, 56 Miss. 212; Baird v. Boucher, 60 Miss. 326, and Hammett v. Markham, 128 Miss. 39, 90 So. 848, are not applicable. Furthermore the rule is not applicable where the rights of creditors are involved and the estate is liable for such debts. See Code 1930, Section 1691.

In the Maryland case, above cited, the action was attempted to be brought in accordance with the statutes of that state, but did not comply therewith; however, the proceedings being by the trustee, the court held that they would be validated under the power of the will authorizing such parties to make the sale. In this state the general rule as to such powers is that they are strictly construed, and must be strictly complied with; that when powers are named in an instrument, it will not be held to include powers not named therein, and which are not absolutely necessary to carry out powers which are named. Or, on the other hand, if powers are prohibited specifically, only those specifically named will be held to remain within the prohibition. State ex rel. Greaves v. Henry, 87 Miss. 125, 40 So. 152, 5 L. R. A., N. S., 340.

The power to sell land does not include power to mort-

gage it. Stokes v. Payne, Kennedy & Co., 58 Miss. 614, 38 Am. Rep. 340. The power to sell under the will does not include power to exchange. Columbus Banking & Ins. Co. v. Humphries, 64 Miss. 258, 1 So. 232. It is also held that where the grantee in a deed giving him a life estate with power to sell in fee in his lifetime made voluntary conveyance to his wife, the wife does not receive the fee title thereof, as between husband and wife, although a legal consideration for the conveyance passed. Jones v. Stamps, 120 Miss. 60, 81 So. 651.

Just how it can be considered that the power given Mrs. Gertrude H. Faison, under the will, can be brought into the case, where no attempt was made to exercise such power by her, is difficult to see. It appears affirmatively in the testimony quoted above that the parties clearly understood at the time that a deed from Mrs. Faison, under the will, would not divest the junior mortgagees and the probated claims, and consequently would be of no value. The proceeding was intended to foreclose the deed of trust in favor of bondholders, and, of course relied upon to divest the title out of all persons, so that buyer would get title at such sale; but so far as this complainant, Ann F. Gordon, is concerned, it is absolutely futile, and divests her of nothing.

Furthermore, it is shown by the record that Mrs. Gertrude H. Faison, in making agreements with Wirtz and Watson in regard to the foreclosure, occupied an inconsistent position, being trustee under the will, guardian for the minors under the will, and as executor under the will, being under duty to do everything to promote the interests of the creditors of the estate, rather than to promote her personal interest, at the expense of the fiduciary relation which she occupied. All of the parties knew, as the evidence shows, of this relationship, and knew of her duties as executrix of the will, and of her duties as guardian of the minors. Consequently all parties to the agreement, having beneficial interest, were parties to an inequitable, inconsistent and illegal agree-

ment, under which Wirtz was to buy the property as cheaply as possible; and if he became the purchaser, he was to sell to Mrs. Faison, for the benefit of herself, and as expressed in some of the testimony, the estate; she to take bankruptcy in the meantime, and to receive personal consideration for her consent and agreement thereto to be furnished during the year 1933, in carrying her crop on the lands involved in the sale.

Executors and administrators are trustees for the benefit of creditors and distributees, so that on selling the land to pay debts, they are bound to obtain as high a price as possible, and cannot directly or indirectly be purchasers thereat. McGowan v. McGowan, 48 Miss. 553; see, also, Alexander v. Hancock, 177 Miss. 590, 171 So. 544; Mississippi Digest, title Executors and Administrators, 144; Buckingham v. Wesson, 54 Miss. 526; Belt v. Adams, 124 Miss. 194, 86 So. 584; Mississippi Digest, title Executor and Administrator, 133; Columbus Banking & Ins. Co. v. Humphries, 64 Miss. 258, 1 So. 232; Richardson v. Biglane, 81 Miss. 676, 33 So. 650; Pearson v. Moreland, 7 Smedes & M. 609, 45 Am. Dec. 319; Grant v. Lloyd, 12 Smedes & M. 191; Mississippi Digest, Executors and Administrators, 380; Liddell v. Strong, 183 Miss. 805, 184 So. 432; Brandau v. Greer, 95 Miss. 100, 48 So. 519, 21 Ann. Cas. 1118; Heard v. Daniel, 26 Miss. 451; 28 C. J. 1154.

In Liddell v. Strong, supra, it was held that a guardian can have no divided interest in matters affecting a ward, the interest of the ward coming first; and that when a guardian finds himself so situated, "either personally or as trustee or agent for others, he cannot in vital particulars give undivided allegiance to his wards, his proper course is to forthwith resign his guardianship, turning over to his successor all the wards' estate and furnishing all the material information which he has which bears on the safety and preservation of the estate, and, failing to take such course, he is liable for all foreseeable proximate consequences."

It was held in that case that guardians of minors, "who

had obtained authority to deposit guardianship funds in bank of which he was cashier was liable to estate for loss resulting from failure to withdraw funds from bank prior to failure of bank when he had knowledge of danger to deposits, as against contention that failure to withdraw guardianship funds was excused because withdrawal would have constituted breach of duty to other depositors of bank as cashier.''

In the course of the opinion, 183 Miss. at page 813, 184 So. at page 433, the Court said: ''The difficult and embarrassing position in which appellant found himself in the gloom of the dark days then lowering upon the country excites a natural sympathy, but it must be repeated, as has in one form or another so often heretofore been declared, that the wards in a guardianship come first—a guardian can have no divided interest.'' Citing Brandau v. Greer, 95 Miss. 100, 48 So. 519, 21 Ann. Cas. 1118; Heard v. Daniel, 26 Miss. 451, 452, 455; 28 C. J. 1154. ''Whenever a guardian finds himself so situated that, because of an adverse interest, either personally or as a trustee or agent for others, he cannot in vital particulars give undivided allegiance to his wards, his proper course is forthwith to resign his guardianship, turning over to his successor all the wards' estate, and furnishing at the same time to his successor all the material information which he has which bears upon the safety and preservation of that estate. Failing to take that course, he must be held to all the foreseeable proximate consequences of such failure.''

The appellants, in their cross-bill in answer to the bill of complaint, of Ann Faison Gordon, undertook to justify the appointment of the guardian ad litem, and the waiver of process for the minors by such guardian; and to contend that the sale was legal and divested the minors of their interest. It also set up that the appellant, Wirtz, had made certain improvements, upon the

premises, and that if the foreclosure decree was set aside, he should be allowed the value of the improvements.

Thereafter an amended cross-bill was filed, seeking to bring in other parties who were not parties to the original bill, but who had equities or some rights in the mortgage securing the bonds under the deed of trust executed by E. H. Faison and Gertrude H. Faison. Here they also seek to invoke the principle that there was no tender of the debt due under the mortgage by the complainant, and that that was a condition necessary to entertainment of the bill.

As stated above, Wirtz was a party to an inequitable and illegal agreement, by which he was to buy the property at the least possible price, and if he were the successful bidder was to resell to Mrs. Faison for the benefit of the estate, provided she could secure during the course of the year sufficient money to pay off the bonds which had been secured by the deed of trust, that were held by Wirtz. By this agreement he was to furnish her $1,000 with which to complete the crop then started on the premises. If she could not secure the money she was to yield him possession, and give him a certain share in the crop named in the agreement.

Wirtz well knew the desperate situation of Mrs. Faison in regard to securing financial assistance; and it was his intention and purpose in making the agreement to secure for himself, at all events, full payment for the bonds held by him, amounting at the time of the filing of the bill to $21,000, but which, at the time the proceedings were instituted here, had been increased to $69,000 by securing bonds from other bondholders.

Wirtz bid for the property the nominal sum of $5,000; the property was worth, according to the evidence in the case, and the finding of the chancellor, the sum of $150,000, of which value approximately $24,000 in improvements had been made by Wirtz—the cross-bill stating that he had improved it in the amount of $23,000. The chancellor, in granting the relief sought by the com-

plainant, awarded to Wirtz the lands which contained $24,000 of improvements, of which a gin plant was susceptible of being moved from the premises. He held that Wirtz was not a purchaser in good faith, but that inasmuch as the improvements made by him on the property, exclusive of the gin plant, amounted to $10,000, that the value thereof had been increased in the amount of $10,000 by such improvements; he rendered a decree charging the lands of complainant and her sister each with one third of the $10,000, directing that the land be sold if this sum were not paid within the time fixed by the decree.

As stated above, Wirtz was the principal beneficiary of the illegal and inequitable agreement, he having dictatorial power, practically, to fix the terms of the agreement; and technically he was guilty of entering into an illegal agreement by the executor and guardian contrary to the duties of her trust. Consequently, Wirtz is guilty of inequity, and is in no position to apply the dictum that he who seeks equity must do equity. This maxim will not be applied if it would result in an act contrary to public policy. Toler v. Love, 170 Miss. 252, 154 So. 711; 19 Am. Juris. 324, Section 469, note 20; Heflinger v. Heflinger, 136 Va. 289, 118 S. E. 316, 32 A. L. R. 1088; Simmons v. Simmons, 57 App. D. C. 216, 19 F. (2d) 690, 54 A. L. R. 75. The maxim that he who seeks equity must do equity will not be applied for the purpose of defeating equity. Germania Life Ins. Co. v. Bouldin, 100 Miss. 660, 56 So. 609; Woods v. Campbell, 87 Miss. 782, 40 So. 874.

Consequently the appellant, Wirtz, was not entitled to any relief on the cross-bill, because of his inequity in making the agreement, and bidding the land in thereunder, for a mere nominal sum, grossly shocking to the enlightened conscience. The finding of the chancellor that Wirtz was not a purchaser in good faith is overwhelmingly demonstrated by the facts in this cause.

It is provided in Section 1474, Code of 1930, that:

". . . a defendant shall not be entitled to such compensation for improvements or taxes unless he claims the premises under some deed or contract of purchase acquired or made in good faith."

It will be noted from this statute that a defendant shall not be entitled to such compensation for improvements or taxes unless he claims the premises under some deed or contract of purchase acquired in good faith. This section is applicable to the chancery court because equity follows the law, and it is a guide for all cases as to how the improvements, rents and profits shall be set off against each other. A party who goes into possession of property where his claim is not in good faith, as understood in the law, can recover nothing by virtue thereof.

Wirtz knew all the facts, and was in the agreement which was reached after long discussion; while he may have been mistaken in the law, he could not avail of that mistake, if such it be. If the defendant knows the facts, but mistakes the law, he is not, in case the law be against him, a bona fide purchaser. Holmes v. McGee, 64 Miss. 129, 8 So. 169. "A defendant in ejectment cannot claim for improvements, unless, when he placed them on the land, he was claiming under some deed or contract of purchase made or acquired in good faith. It is not sufficient that at the time he honestly expected that the owner, whose title he recognized, would eventually give him the land." Thomas v. Thomas, 69 Miss. 564, 13 So. 666.

Of course, the same rule applies in equity as applies in an ejectment suit, the maxim that equity follows the law being applicable, and the chancellor so held in his opinion.

The measure where value of improvements are allowable in this state is shown in Hicks v. Blakeman et al., 74 Miss. 459, 21 So. 7, 400, where it is said: "The amount that the market value of the land is enhanced by the improvements made thereon, in good faith, by one

claiming under the void conveyance of a guardian, is the proper measure of his recovery on account thereof.'' Citing Nixon v. Porter, 38 Miss. 401; Wilie v. Brooks, 45 Miss. 542; Clark v. Hornthal, 47 Miss. 434; and Massey v. Womble, 69 Miss. 347, 11 So. 188.

Another inequity committed by the appellant, Wirtz, and the trustee, Hachmeister, was in agreeing and consenting, and acting on the agreement, which deprived other bondholders of their fair pro rata of the proceeds of the sale of land under the deed of trust. The provision in the bonds was that each of the bondholders was to have equal rights, and they bought the bonds relying upon this right. The manipulation of the sale, so as to acquire property valued at least at $100,000, and on which the loan value, prior to the sale, had been sufficient to secure more than $100,000, of obligations, at a nominal sum, is shocking; for a party to seek to invoke the principle that the complainant herein could not have relief until she paid not only what the buyer himself had invested in the property, to make him whole, but to take the additional burden of paying off all the indebtedness against the property, although her property would only be liable for its one third.

It is not necessary, whenever an accounting is to be had, to tender money into court. In Aust v. Rosenbaum, 74 Miss. 893, 21 So. 555, it is held that if the object of a bill be to redeem, and not cancel, a mortgage, a previous tender of the sum due is unnecessary where complainant is unable to know, because of defendant's fault, what sum is due upon the mortgage debt. The court quoted at length from the opinion in Casserly v. Witherbee, 119 N. Y. 522, 23 N. E. 1000, in which the doctrine was laid down, with other cases from the New York court, that it is not necessary to tender the amount where the mount of an accounting is unknown, or where an accounting is unnecessary. And then the Court said [74 Miss. 893, 21 So. 558]: ''There must be exceptions to the rule, unless justice is to be sacrificed now and then

to technical rules, and rules of pleading at that. How can one tender where redemption is sought by an infant, who has nothing with which to redeem except the mortgaged estate, and when it appears that the mortgaged estate is largely in excess, in value, of the debt secured, and that a sale of only a part of such estate will suffice to pay the creditor's demands? This presents an exceptional case to the rule, and this very case has been recognized as an exception, thereby demonstrating that the rule is not inflexibly rigid. See Johns v. Smith, 56 Miss. 727. So, too, in cases where an accounting is shown to be necessary to ascertain the amount due, and especially where the amount is not known to the party seeking redemption, and cannot be ascertained by him, because of the fault of his adversary in refusing to furnish information which it was his duty to furnish, an exceptional case is presented, whose peculiar facts take it out of the general rule; for shall any man be required by any rule to perform an impossible act? And this last is the case in hand."

. So here, at the time Wirtz took possession, the complainant was an infant, unable to secure her rights, and who could not determine, from any data in her possession, what amount was due by Wirtz. What she sought here was to have her rights determined, and then to have whatever was due her for the use and occupancy of her property awarded her.

It was likewise held, in Nestor v. Davis, 100 Miss. 199, 56 So. 347, in the fourth syllabus: "While ordinarily it is necessary for a complainant to tender with his bill seeking to redeem property the amount due under his mortgage, yet this principal has no application, where an accounting has been shown to be necessary to ascertain the amount due, and especially where the amount is not known to the party seeking redemption and cannot be ascertained by him because of the fault of his adversary in refusing to furnish information which it is his duty to furnish."

Furthermore, whenever parties in litigation are so situated that one is at a disadvantage as regards the other, or when the peculiar facts of any case make it appropriate, a court may refuse to apply the maxim and grant relief conditioned upon complainant's doing such equity as the Court finds necessary after a full hearing of all the facts. Morgan v. Collins School House, 160 Miss. 321, 133 So. 675; McDonald v. Sanford, 88 Miss. 633, 41 So. 369, 117 Am. St. Rep. 758, 9 Ann. Cas. 1; Southern Home B. & L. Ass'n v. Tony, 78 Miss. 916, 29 So. 825; Purvis v. Woodward, 78 Miss. 922, 29 So. 917; 21 C. J. 178, Section 157.

I am, therefore, of the opinion that the Chancellor's finding was correct, except that he should not have allowed Wirtz for any improvements on the place, under the facts in the case; it was inequitable to do so. It is fundamental that a party cannot profit by his own wrong. Our Legislature, in the section above cited, fixed the method of determining accounting for rents and profits on the one hand, and the improvements and betterments on the other, and expressly declared the legislative policy that parties should not have the benefit of improvements unless they were on the premises in good faith, under some contract.

There is a fundamental difference in the contract of mortgage and a deed of trust. Each is governed by its terms as to the rights of parties to it. After condition broken, a mortgagee has a right to enter and use the land until his debt is paid. Under a void sale under a deed of trust the buyer at said sale has no right to enter; but if he does he is accountable for rents and profits. The right of a trustee, before sale is only to have such possession as may be necessary to make the sale—he has not the right to use the land.